[File No. 5871.]

HANS JESPERSON, Respondent, v. ADVANCE-RUMELY THRESHER COMPANY, INC., a Corporation, Appellant.

(240 N. W. 876.)

Opinion filed August 22, 1931. On rehearing February 13, 1932.

*Lawrence, Murphy, Fuller & Powers,* for appellant.

496

*H. A. Mackoff,* for respondent.

BIRDZELL, J.   In July, 1928, the plaintiff ordered from the defendant a Rumely No. 3 combine harvester with a two-foot extension, a flax sieve, a straw dump and a pick-up attachment, for which he agreed to pay in cash $1,383.57.   The order was in writing and was accepted in writing by the defendant company at La Porte, Indiana, on July 17th.   The contract contained stipulations with reference to warranties and rescission identical with those referred to in Bratberg v. Advance-Rumely Thresher Co. ante, 452, — A.L.R. —, 238 N. W. 552, decided at this term.   On the arrival of the machinery on or about August 3, 1928, the plaintiff paid the purchase price and the freight by check in the sum of $1,477.54.   With the aid of an expert this machine and several others which were shipped on the same car were set up and made ready for use.   This required approximately one week.   The plaintiff thereafter used the machine during the season of 1928, but experienced considerable difficulty with it and experts were sent from time to time to remedy it.   In the spring of 1929 steps were taken to have the machine put in order for use that year.   At harvest time it was again used to some extent, but the plaintiff began to experience the same difficulties that had characterized its use during the preceding year; whereupon he negotiated for and obtained a machine of another make.   He determined to rescind the contract for the purchase of the machinery from the defendant and turned it over to the agent from whom he purchased the new machine with the understanding that he was to hold it to the use of the defendant subject to the outcome of the plaintiff's further negotiations with the defendant

or to the result of a suit against it. In case he should fail to establish rescission, the agent was to take the machine in question off the plaintiff's hands and credit him with $450 on the contract for the new machine, and in case he should establish his right upon the attempted rescission he, the plaintiff, was to pay this further amount in cash. The plaintiff notified the defendant in writing of his determination to rescind and demanded the repayment of the purchase price. The defendant declined to pay the same, whereupon the instant action was brought. The plaintiff recovered a verdict for the amount paid with interest. The defendant moved for a judgment notwithstanding the verdict or in the alternative for a new trial, which motion was denied. The instant appeal is from the judgment entered on the verdict. The same constitutional questions are raised in this case as are raised in the case of Bratberg against the same defendant, cited supra. But in the view we take of the instant case, such constitutional questions are not determinative of the rights of the parties and need not be discussed.

In the motion before the trial court and on this appeal the appellant contended and contends that if the theory of the plaintiff as to his right of rescission under the statute (Sess. Laws 1919, chap. 238), be adopted, the evidence nevertheless conclusively shows that the plaintiff did not return the machine or offer to return it at the place where he received it, nor place it at the disposal of the defendant, and that, therefore, under the undisputed evidence he failed to effect a rescission of the contract and he is consequently precluded from recovering damages in this action. The evidence with respect to this matter may be briefly stated and summarized as follows:

So far as the use of the machinery and its defective condition during the season of 1928 is concerned, the evidence amply shows that it was defective in several vital respects; that while it was used to harvest approximately 250 acres of the plaintiff's crop, it did not work satisfactorily on account of various inherent defects that were not adequately remedied by experts supplied by the defendant. But there was no rescission during that year on account of the defects that were then disclosed, the plaintiff evidently relying upon promises of agents of the defendant to remedy them. In the spring of 1929 Hamann and Bratberg, who had purchased machines at the same time as the plaintiff and who had had somewhat similar experiences therewith, went to

Fargo to make inquiry of the defendant's agent concerning what the defendant would do to put the machinery in condition for use. They were accompanied by Eskestrand, the local agent through whom the plaintiff had purchased. They were likewise to represent the plaintiff in making these inquiries. Some time afterward the plaintiff received a letter from the general agent at Fargo and still later received some parts and in the latter part of July an expert came to the plaintiff's place, installed the new parts and repaired the machine. It was not operated while the expert was there. When the expert had finished the plaintiff was advised that the defendant could not see what more could be done to make the machine better, that it did not take much to overcome the trouble, and the plaintiff said he would start the machine and when he worked it in the field he would know whether or not it had been remedied and he would not be satisfied if he had the same trouble again. At about this time the plaintiff, in company with Eskestrand and the other purchasers, called at the defendant's office in Fargo and had some further talk with one Malmo, the state agent, and requested some additional parts which he thought would be needed. About the 12th or 13th of August he started to work with the machine and he cut with it until the 18th of August. While he used it in a comparatively level field of some 40 acres it worked very well, but when he took it to a field where the ground was more uneven it began to give the same trouble he had experienced the year before. On the 18th or 19th of August he took a machine of another make under a contract with one Helmer and on the 20th or 21st Helmer took the Rumely machine away from the plaintiff's place. The plaintiff says he did not notify the Rumely Company immediately but that about the 25th of August he saw Martin Eskestrand, who was the local agent through whom he had purchased the machine, and told him that he had taken out the new combine and found he could do the work under the same conditions without any trouble; that he wanted to return the defendant's machine and get his money back. He said he was told by Eskestrand that he did not want anything to do with it and did not care where he left it. Eskestrand testified that he told the plaintiff on this occasion that he had nothing to do with the company; that his contract had been cancelled some time before and that he was no longer their representative, and he testified that his agency had ter-

minated; that he had written a letter on the 10th of August resigning; that, speaking of the machines which his purchasers desired to return, he said "They asked me where I wanted them and I said I don't want anything to do with them, I could not sell it anyway so I am done." Thereafter on the 10th of September the plaintiff mailed a registered letter to the defendant in which he stated:

"I am therefore notifying you that I have rescinded, and am herewith rescinding the sale of this combine to me with attachments and pick-up attachment which I purchased from you as above stated, and I herewith demand of you the return of the purchase price and interest thereon as well as the amounts I have paid out in repairs in attempting to repair this machinery and which was done at your suggestion and request.

"I have tendered the return of this machinery to your agent, Martin Eskestrand at Richardton, who refuses to accept the same, and I have also advised him that I have rescinded this contract and demanded the return of the money that I paid out, and I am advising you that this machinery is now placed at your disposal and subject to your order at the place of business of Mr. Elling Helmer at Taylor, N. Dak. This machinery is now at your disposal to do with as you see fit and will be delivered to you or your representatives by Mr. Helmer where it now is and was left at your disposal and subject to your order.

"Yours very truly,
"Hans Jesperson."

The undisputed evidence shows that Helmer took this combine from the plaintiff's place on the 20th or 21st of August and that he took it to a farm he had rented about three or four miles from Taylor, where it was operated by one Grogen to harvest Helmer's grain. Grogen took the machine from Helmer's place to his own place, where it was used to harvest his grain. It was used on the Grogen farm until the 14th of November, 1929, when it was taken to Taylor and put on a lot belonging to Helmer. Grogen furnished the engine to pull the combine in harvesting both Helmer's crop and his own under an arrangement whereby he would use the combine for harvesting his own crop without cost, he and Helmer dividing the expense incurred for gas and oil. The undisputed evidence shows that considerable use was thus made of

the machine throughout this season, but it does not show that the plaintiff had personal knowledge of this fact.

Under these facts the question arises as to whether or not the plaintiff had effected a rescission of the contract for a breach of the statutory warranty claimed by him and has put himself in position to recover the purchase price. The statute says "the purchaser may rescind the sale by giving notice within a reasonable time after delivery to the parties from whom any such machinery was purchased, or the agent who negotiated the sale or made delivery of such personal property or his successor, and placing same at the disposal of the seller." The trial court submitted the question of the reasonableness of time of the rescission to the jury, holding that, in view of the efforts and promises of the defendant, the delay was not so great as to deprive the plaintiff of this remedy if the jury should find, in view of the facts, that the attempted rescission was within a reasonable time. We think the record warrants this holding on the part of the trial court.

Passing next to the question of notice and rescission, the statute says that the notice may be given to the party from whom the machinery was purchased or the agent who negotiated the sale or made delivery. The agent in this case was Eskestrand, and the plaintiff says that he notified Eskestrand on the 25th of August. The statute does not require the notice to be in writing, so it may be assumed that an oral notice served upon Eskestrand would be sufficient. The plaintiff did, however, subsequently, about the 10th of September, serve notice by registered mail upon the defendant. But the notice alone does not effect a rescission. The purchaser must place the machine "at the disposal of the seller." The plaintiff does not show that he actually tendered the machine to Eskestrand or that Eskestrand had any authority to receive it on behalf of the defendant, and he says in his letter of September 10th to the defendant "I am advising you that this machinery is now placed at your disposal and subject to your order at the place of business of Mr. Elling Helmer at Taylor, N. Dak.," Taylor not being the place at which the machine was purchased. The facts with reference to the delivery of the machine to Helmer indicate beyond question that Helmer was acting as agent for the plaintiff and not for the defendant in receiving the machine. It is incumbent on one who rescinds a contract for breach of warranty not only to tender

the chattel but to keep his tender good. If he tenders it to one who declines to receive it and subsequently on this account keeps it in his possession, he must hold it or dispose of it as bailee for the seller and not in his own right. If, therefore, after an attempted rescission the purchaser makes use of the article purchased inconsistent with the right of the seller in whom he has attempted to revest the property, his act in so doing nullifies the effect of his rescission. 2 Williston, Sales, 2d ed. § 610; 24 R. C. L. 293. The law is thus stated in Graham v. Hatch Storage Battery Co. 186 Mass. 226, 230, 71 N. E. 532, 534, where the purchasers of defective batteries sought to recover back the price. "When they rejected it they became subject to the general rule that he who seeks to reject an article as not in accordance with the contract, must, after he discovers its true condition, do nothing inconsistent with the vendor's ownership of the property. See Brown v. Foster, 108 N. Y. 390, 15 N. E. 608. If the plaintiffs simply had allowed the batteries to remain in their possession subject to the defendant's order, they nevertheless could have relied upon their rejection. But they did more. For several months after rejecting it they used it for their own profit and convenience in the work for which it was constructed and delivered to them under the contract. As between the parties to the contract, such a use is not to be regarded as tortious, but only as founded upon rights given by the contract. It is utterly inconsistent with a purpose to resort to the remedy of rejection, and is consistent only with a claim to title and ownership, and consequently it must be held as an abandonment of the right of rejection. The verdict for the defendant, therefore, was properly directed." This principle is recognized and applied in the following cases: Allis-Chalmers Mfg. Co. v. Frank, 57 N. D. 295, 221 N. W. 75; Fuller v. Fried, 57 N. D. 824, 224 N. W. 668; Maples v. Douglass, 205 Ala. 94, 87 So. 585; Pleak v. Marks, 171 Iowa, 551, 152 N. W. 63; Learned v. Hamburger, 245 Mass. 461, 139 N. E. 641; Levy v. Chonavitz, 163 N. Y. Supp. 658; Gordon Dryer Co. v. Staier Chemical Co. 191 N. Y. Supp. 201; Gorman-Head Auto Co. v. Barrett, 78 Okla. 34, 188 Pac. 1083; Lamborn v. Green, 150 Tenn. 38, 262 S. W. 467; Advance-Rumely Thresher Co. v. Stohl, 75 Utah, 124, 283 Pac. 731; Scriven v. Hecht (C. C. A. 2d) 287 Fed. 853. See also 3 Black, Rescission & Cancellation, 2d ed. § 626; 3 Williston, Contr. § 1529; 1 Uniform

Laws Annotated (Sales) 412–416 and cases cited. This is likewise the rule under § 69 of the Uniform Sales Act (§ 6002a69, Compiled Laws Supplement 1925). Paragraph 5 of the section cited reads as follows:

"Where the buyer is entitled to rescind the sale and elects to do so, if the seller refuses to accept an offer of the buyer to return the goods, the buyer shall thereafter be deemed to hold the goods as bailee for the seller, but subject to a lien to secure the repayment of any portion of the price which has been paid, and with the remedies for the enforcement of such lien allowed to an unpaid seller by § 53."

As a bailee he owes the duty of a depositary to a depositor. He is precluded from using the property as his own. Comp. Laws 1913, § 6021. In the instant case there can be no distinction between the purchaser allowing his designated agent to make use of the property inconsistent with the defendant's ownership and the plaintiff himself doing so. For purposes of the legal effect of the attempted rescission, it is as though the plaintiff, after notifying the defendant of his intention to rescind and declaring that he held the property subject to the defendant's order, had forthwith continued to use the same through the season for the purpose of harvesting his own crop. Under the well settled law such conduct destroys the effect of the rescission. We are clearly of the opinion under the undisputed facts in this case that the plaintiff did not effect a legal rescission of the contract. Therefore, he did not revest title in the defendant and may not recover the purchase price.

It follows that the judgment predicated upon a rescission of the contract is erroneous and it is therefore reversed.

CHRISTIANSON, Ch. J., and BURKE, BURR and NUESSLE, JJ., concur.

BIRDZELL, J. (on rehearing). A reargument was ordered on the question as to whether or not this court should order a dismissal of the action or a new trial and, in the event of ordering a new trial, as to whether the plaintiff should be permitted to amend the complaint so as to state a cause of action to recover damages for breach of warranty. Such reargument has been had. Upon the reargument the appellant stressed those provisions of the contract wherein it was stipulated that

in case the purchaser should claim the machinery to be defective and not to fulfill the warranty the seller should be notified and be given a reasonable time in which to put it in condition to comply with the contract, or be allowed at its option to substitute a machine or part, and upon failure of the seller in this respect the purchaser should discontinue the use of the machine, or substituted machine, and place the same at the disposal of the seller and the sale should be considered rescinded, the seller being obligated to return the money, notes and other security received and that this should "constitute the exclusive remedy of each party and a full settlement and release of all claims of every nature by one against the other pertaining to this transaction." Such a provision of a machinery contract of this character has been held binding and effective. Palaniuk v. Allis-Chalmers Mfg. Co. 57 N. D. 199, 220 N. W. 638; Holden v. Advance-Rumely Thresher Co. post, 584, 239 N. W. 479. The rescission here fails by reason of the acts of the purchaser as shown in the original opinion.

We are of the opinion that, under the facts in this case, it clearly · appears that the appellant has no cause of action and that the order of this court must be for a reversal of the judgment and a dismissal of the action.

CHRISTIANSON, Ch. J., and NUESSLE, BURR and BURKE, JJ., concur.