[File No. 6018.]

A. M. JACKSON, Respondent, v. ADVANCE-RUMELY THRESHER CO., INC., a Corporation, Appellant.

(241 N. W. 722.)

Opinion filed March 25, 1932.

*Lawrence, Murphy, Fuller & Powers,* for appellant.

*Jacobson & Murray,* and *Wm. Lemke,* for respondent.

PER CURIAM: Plaintiff brought this action for rescission of a contract under the terms of which the plaintiff purchased from the defendant a certain harvester-combine. In his complaint he alleges that on or about August 13, 1928, he purchased from the defendant a certain harvester-combine and that in payment thereof he executed and delivered to the plaintiff three certain promissory notes; that said machine was purchased for the personal use of the plaintiff in the harvesting and threshing of grains on farm lands in this state, all of which was known to the defendant; that the machine was unfit, and did not properly perform the work, for which it was purchased; that it was defective in workmanship and material and could not be made to operate successfully; that on or about September 5, 1928, plaintiff rescinded the purchase and gave notice of such rescission to the defendant and the agent who had negotiated the sale and that the machine had been placed at the disposal of the defendant as its property, and demanded a return of the promissory notes; that the defendant rejected the offer and refused to surrender the notes or to accept redelivery of the machine; that by virtue of the provisions of chapter 238 of the Session Laws of North Dakota for the year 1919 plaintiff had a reasonable time after the delivery of the machine to inspect and test the same; that it was so inspected and tested within a reasonable time after delivery and proved unfit for the purpose for which it was purchased and that the sale was duly rescinded in conformity with the provisions of said chapter 238, Laws 1919 and that plaintiff is entitled to a return and redelivery of said promissory notes. The defendant interposed an answer wherein it is asserted that chapter 238, Laws 1919, is unconstitutional in this, that it interferes with the freedom of contract; imposes an arbitrary and unreasonable burden upon business; deprives the defendant of its property and its right to contract without due process and denies to it the equal protection of the laws, all in violation

of the guarantees of the Fourteenth Amendment to the Constitution of the United States.

The answer further alleged: "The plaintiff contracted and agreed that said machine was purchased without warranty of any kind, with respect to material or workmanship, fitness for the purpose of purchase, or otherwise, and that plaintiff as such purchaser would and did waive any and all warranties of every kind, express, implied or statutory, and all right to claim or demand any remedy for the breach thereof, and did agree unconditionally to pay the purchase price of said machine as represented by the promissory notes described in the complaint."

The plaintiff demurred to this answer. The demurrer was sustained and judgment was entered in favor of the plaintiff.

Chapter 238, Laws 1919, so far as material here, provides:

"Sec. 1. Any person . . . purchasing any gas or oil burning tractor, gas or steam engine, harvesting or threshing machinery for their own use shall have a reasonable time after delivery for the inspection and testing of the same, and if it does not prove to be reasonably fit for the purpose for which it was purchased the purchaser may rescind the sale by giving notice within a reasonable time after delivery to the parties from whom any such machinery was purchased, or the agent who negotiated the sale or made delivery of such personal property or his successor, and placing the same at the disposal of the seller.

"Sec. 2. Any provision in any written order or contract of sale, or other contract which is contrary to any of the provisions of this Act is hereby declared to be against public policy and void."

The objects sought to be accomplished by the enactment of this statute are clearly enunciated in the statute itself. They are to obtain for the purchaser of machinery of the kind described in the statute "a reasonable time after delivery for the inspection and testing of the same;" and if it did "not prove to be reasonably fit for the purpose for which it was purchased," to afford the purchaser the right to "rescind the sale by giving notice within a reasonable time after delivery to the parties from whom any such machinery was purchased, or the agent who negotiated the sale or made delivery of such property or his successor and placing the same at the disposal of the seller." At

the time of the enactment of the statute, and during the entire history of the state prior thereto, the production of grain was and had been the basic industry of the state. Contracts for the purchase of machinery to be utilized in the production of grain were in a very real sense the most important contracts in the state. All machinery so purchased and used in this state was manufactured outside the state,—the different manufacturers and distributors maintaining offices and employing sales agents within the state. The sales contracts were prepared by the seller. As a rule there was no opportunity for the purchaser to inspect the machinery at the time the contract was signed by him. Generally the contracts were in the form of an order containing extended provisions having a tendency to restrict the rights of the purchaser and the liability of the seller. In some cases such contracts contained provisions waiving all warranties, in others the warranties were so limited as to be of little or no value, such, for instance, as providing that the machinery was "warranted only against breakage caused by manifest defects in material" and thus excluding all other warranties, both expressed and implied. Of course, tractors, harvesting and threshing machinery could be tested only during the proper season, that is harvesting machinery could be tested only during the harvest season and threshing machinery could be tested only during the threshing season. It was of vital importance to the people of the state that farm machinery should be fit for the purpose for which it was sold. If it failed to work and other machinery must be obtained it was essential that the purchaser should be in position to do so at once as the delay of only a few days might result in the loss of the entire crop. While the farmers in purchasing machinery dealt with agents in this state, the contracts frequently, if not generally, contained provisions to the effect that in the event the machinery failed to comply with the warranties, written notice of this fact must be given directly to the seller at its head office within a stipulated number of days or hours after the delivery of the machine. The records of this court show that in many cases purchasers of machinery, finding it to be defective, in good faith notified the agent from whom they purchased it, or the general agent, or both, but failed to notify the head office within the time stipulated in the contract and, consequently, lost the right to assert the breach of warranty.

It is matter of common knowledge that machinery of the kind enu-

merated in the statute, much of it wholly experimental in character, was sold in large quantities in North Dakota and that in numerous cases the purchasers, on account of provisions in the sales contracts of the nature alluded to above, were required to pay for machinery that was wholly useless. In many instances farmers who purchased such machinery lost their farms as a result of the financial obligations assumed by them under the contracts. The members of the legislature were, of course, fully aware of this situation. They were confronted with a condition and not with a theory and so in order to remedy that condition they enacted chapter 238, Laws 1919, so as to assure to every purchaser of machinery of the kind described in the statute, a reasonable opportunity to test the same, coupled with a right to rescind the contract if, upon such test, the machinery was found to be unfit for the purpose for which it was purchased. And, further, to permit such purchaser to give notice of the defects in the machinery and of the rescission of the contract to the representative of the company from whom the machinery had been purchased or his successor. The legislature recognized the necessity of legislation of this nature long before the enactment of chapter 238, Laws 1919. See chapters 218, 219, Laws 1913.

Viewed from a practical as distinguished from a legalistic standpoint it is apparent that chapter 238, Laws 1919 has not imposed any conditions upon the purchase and sale of farm machinery that seriously interfere with such business in this state. The law became effective July 1, 1919 and since that time has affected all contracts for the purchase and sale in this state of machinery of the kind described in the statute. Minneapolis Threshing Mach. Co. v. Hocking, 54 N. D. 559, 209 N. W. 996. And, although there apparently has been a substantial decrease in litigation concerning farm machinery, cases have arisen involving the construction and application of the statute (See Minneapolis Threshing Mach. Co. v. Hocking, 54 N. D. 559, 209 N. W. 996; Palaniuk v. Allis-Chalmers Mfg. Co. 57 N. D. 199, 220 N. W. 638; Allis-Chalmers Mfg. Co. v. Frank, 57 N. D. 295, 221 N. W. 75; Dwinnell v. Boehmer, 60 N. D. 302, 234 N. W. 655; Bratberg v. Advance-Rumely Thresher Co. 61 N. D. 452, 238 N. W. 552, 78 A.L.R. 1338; Holden v. Advance-Rumely Thresher Co. 61 N. D. 584, 239 N. W. 479; Jesperson v. Advance-Rumely Thresher Co. 61 N. D. 494, 240

N. W. 876); but the validity of the law was first drawn in question in Bratberg v. Advance-Rumely Thresher Co. 61 N. D. 452, 238 N. W. 552, 78 A.L.R. 1338, supra, which involved a contract made more than eight years, and litigation which arose more than ten years, after the law had become effective.

It is undisputed that the machinery involved in this case is a gas and oil burning harvesting and threshing machine and, hence, falls within the class of machinery covered by the statute.

The defendant contends that the statute infringes rights guaranteed to it by the Fourteenth Amendment to the Constitution of the United States in the particulars heretofore enumerated and that, consequently, the legislature transcended its power and that the enactment is void. This question was considered at length in the recent case of Bratberg v. Advance-Rumely Thresher Co. 61 N. D. 452, 238 N. W. 552, 78 A.L.R. 1338, supra. Apparently the contract involved here is the same as that which was involved and considered in that case and the machinery involved is also of like character. We deem it unnecessary to restate at length in this opinion the reasons for the conclusions announced by us in Bratberg v. Advance-Rumely Thresher Co. to the effect that the statute does not infringe upon any of the constitutional guaranties invoked by the appellant. It is sufficient to say that we still adhere to the views there expressed.

It follows therefore that the trial court was correct in holding that the plaintiff was entitled to reasonable opportunity to try the harvester-combine and that the provisions in the contract waiving the right to test the machine and to rescind the contract were not binding upon him. The judgment appealed from is affirmed.

CHRISTIANSON, Ch. J., and BURKE, NUESSLE and BURR, JJ., concur.

BIRDZELL, J. (dissenting). In so far as the principal opinion in this case speaks of facts which point to the necessity for reasonable protection to those entering into contracts for the purchase of certain classes of farm machinery to the end that they may enjoy the ordinary legal remedies for the breach of such contracts as are made, I do not disagree with the opinion and I express no constitutional objection to such legislation. The first statutes that were passed were designed to

give this protection. Chapters 218 and 219 of the Session Laws of 1913, which are §§ 5991, 5992, 5993 and 6002 of the Compiled Laws of 1913. These statutes did not seek to impose any warranty or other affirmative contract contrary to the real contract of the parties. They merely provided that a purchaser of personal property under written warranty should have a reasonable time in which to ascertain whether or not the property complied with the warranty and made the question of reasonable time in all cases one of fact for the jury. And they further provided that any notice of breach or of defects might be given either in writing or orally to the seller or to the seller's agent in this state who had negotiated the sale or delivered the property, or to his successor. They voided any provision in a written contract to the contrary and any provision purporting to waive any right of action arising out of the sale before the cause of action had accrued. These statutes obviated the effect of harsh contract stipulations prejudicial to the full enjoyment of ordinary legal remedies for breaches of warranties actually made. But some of them, §§ 5991 and 5992 of the Compiled Laws of 1913, were expressly repealed by § 77 of chapter 202, Session Laws of 1917, known as the Uniform Sales Act (this statement is based upon the enrolled bill but is not borne out by the legislative journals which show that these sections were not included in the repeal section of the original bill and that the bill was never amended so as to include them), and the following legislature passed the act in question.

To my mind there is a fundamental distinction between a statute designed to protect parties in the enjoyment of ordinary legal remedies for breaches of contracts actually made and statutes imposing contracts which both parties may be unwilling to make. A statute of the latter sort, in requiring or imposing a warranty and giving a remedy of rescission to one who may later be disappointed with a bargain he knowingly and understandingly made or even solicited, enables every buyer within the statute to repudiate his real contract and shift to the other party the entire burden of the transaction.

Of course, it may be said that in regulating transactions of the character referred to in the statute it is competent for the legislature to impose a contract reasonably designed to make its regulation effective, Wanberg v. National U. F. Ins. Co. 46 N. D. 369, 179 N. W. 666,

260 U. S. 71, 67 L. ed. 136, 43 S. Ct. 32; Minneapolis Threshing Mach. Co. v. Hocking, 54 N. D. 559, 209 N. W. 996; Palaniuk v. Allis-Chalmers Mfg. Co. 57 N. D. 199, 220 N. W. 638; Dwinnell v. Boehmer, 60 N. D. 302, 234 N. W. 655, and that parties must be held to have contracted with the statute in mind. The statute is read into the contract regardless of any stipulation to the contrary, and this court has properly and consistently so held in cases where no constitutional question was raised. But, where the constitutional right is relied upon, such a view cannot be followed to the logical conclusion of supporting every contract which may be imposed by legislation without examining the regulation thus made effective to determine whether or not it is consistent with the liberty guaranteed by the Fourteenth Amendment. As applied to contracts made in the pursuit of a calling or a business, or in the advancement of the ordinary affairs of life, there is a field for regulation and a point beyond which regulation may not be carried without infringing the liberty which is guaranteed by the Constitution.

The statute supported in the Wanberg Case seems to me to be clearly distinguishable from the one here involved. In that case the insurance company was given a reasonable opportunity to determine whether to accept or reject the application. It required a degree of promptness and expedition appropriate to the nature of the business undertaken. Failure to perform the duty to accept or reject within such time was made tantamount to acceptance as a means of giving to the applicant the protection which he had taken the necessary steps to secure and which he would have reasonable grounds for thinking he had obtained. By this statute the legislature, in effect, said to an insurance company desiring to engage in the hail insurance business that it should make arrangements whereby those whose applications it should take would know within twenty-four hours whether or not they were protected.

The statute now before us is in no sense a regulation of the manner in which any given business is to be transacted so far as promptness, over-reaching or other element having to do with fair and just dealing, economic or social advantage is concerned. It is an assumption of legislative control over all sales of machinery of the kinds designated, despite the action of the parties; and, in effect, it says that no such contract shall be made unless accompanied by a warranty of fitness for the use for which the machine was purchased for the breach of which

rescission must be allowed. If it is competent to impose this element into every contract for the sale of machinery, whether new or second-hand, whether made by a manufacturer, a dealer, or by a casual owner making but one sale in a lifetime, I am unable to see where any line can be drawn within which the liberty of persons to deal with each other with respect to the ordinary transactions of life is to be enjoyed. Let it be remembered that we have celebrated the hundredth anniversary of the invention of harvesting machinery which is covered by this stat-ute and that steam engines, likewise included, antedate the American Revolution.

It is true that this case and the Bratberg case, which is followed as controlling, were both cases involving sales of combine harvesters, a type of machinery which was not in use in this state when the statute in question was enacted. In view of its novelty and of the various elements and conditions upon which its successful operation here would depend, the contract in the Bratberg Case contained a warranty agreed to by the parties and stipulated against others. The warranty reads: "When properly adjusted and competently operated according to sell-er's instructions on land or grain in suitable condition it will be capable of doing as good or better work than any other machine of the same kind, size and rated capacity working under like conditions on the same job." This warranty is by the statute converted into a warranty of reasonable fitness for the purpose for which it was purchased. So, the statute, which dealt with types of machinery some of which was old and some comparatively new at the time of its enactment, has the effect, as to machines subsequently invented or coming into use, of pre-venting the parties to a sale from contracting with respect to the risk of operation and adaptability, although the novelty be known to both buyer and seller and the elements of uncertainty be equally appreciated and although there be no overreaching whatsoever.

In the opinion of the majority reference is made to the fact that there has been but little litigation under this statute. It may not be out of place to suggest that possibly this is due in some degree to the fact that it has but lately been invoked with regard to a type of ma-chinery that was not in use here at the time of its enactment and for some five years thereafter. It might be further observed, too, by way of indicating that it is not designed or used merely as a means of pro-

tecting those who might be thought to be unfamiliar with the terms of such contracts, that in the instant case the statute is invoked by a dealer in such machinery, in another by an experienced agent or salesman of such machinery, and in still another case by a stockholder in a corporation which was a dealer.

For the above reasons and for the reasons indicated in my dissenting opinion in the Bratberg Case, I think the judgment appealed from should be reversed.