Andy GIMBEL, Plaintiff and Appellant,

v.

John KUNTZ, d/b/a Southside Implement, Defendant and Appellee.

Civ. No. 9657.

Supreme Court of North Dakota.

Dec. 12, 1979.

Rehearing Denied Jan. 10, 1980.

502

Donavin L. Grenz, Linton, for plaintiff and appellant.

Gordon O. Hoberg, Napoleon, for defendant and appellee.

ERICKSTAD, Chief Justice.

This is an appeal from a judgment granted in favor of the defendant whereby the plaintiff had sought to revoke and rescind a contract to purchase a tractor on the ground that the tractor was unfit for the purpose for which it was purchased. We reverse and remand.

In June of 1978, the plaintiff, Andy Gimbel, entered into negotiations with the defendant, John Kuntz, doing business as Southside Implement in Linton, North Dakota, to purchase a new Model 285 Massey-Ferguson tractor. Gimbel operates a body shop in Hazelton during the winter months, and conducts a custom baling operation in the summer. One of Kuntz's salesmen, Steve Hoffer, was sent to see Gimbel at his body shop, and on June 6, 1978, the two entered into an agreement whereby Gimbel agreed to purchase a new Model 285 Mas-sey-Ferguson tractor, complete with a cab, for the price of $13,884. He traded in a 1977 Model 265 Massey-Ferguson tractor, receiving credit towards the purchase of the new tractor in the amount of $9,600. The balance of the purchase price, therefore, amounted to $4,284, which Gimbel has paid.

A new 1977 Model 285 Massey-Ferguson tractor was delivered to Gimbel sometime around June 20, 1978, with approximately two hours of operating time on the engine meter. Gimbel alleges that at all times he thought he was negotiating for, and did in fact purchase, a 1978 tractor. After approximately two hours of use by Gimbel, the tractor broke down on July 3. It was taken to Southside Implement in Linton on July 5, inspected, repaired through the installation of a new PTO plate drive and hub, and road tested. The evidence indicates that the breakdown was due to a piece of bolt that had wedged into the transmission gears.

On July 15, 1978, the tractor was returned to Gimbel, and he used it for his baling operations on July 16, 17, and 18. On July 18, with approximately 20 hours of operating time on the engine meter, the tractor broke down a second time. The following day, Kuntz's employees picked up the tractor and took it to their main shop in Napoleon for repairs. Gimbel testified that when they came to pick up the tractor, he told Southside Implement's truck driver that he no longer wanted the tractor.

On July 21, 1978, Gimbel verbally informed Kuntz and Steve Hoffer that he did not want the same tractor back, but instead, he wanted either a new 285 Massey-Ferguson tractor or a refund. Kuntz offered to go to Fargo to pick up the same type of tractor for Gimbel to use, free-of-charge, while the repairs were being made, but Gimbel refused the offer, stating that he wanted a new tractor or his money back.

Kuntz testified that the tractor was repaired within five days after it was brought into the shop the second time. All the transmission parts were replaced at a cost of approximately $1,362.49. The tractor is

presently located at Kuntz's Southside Implement shop in Napoleon because of Gimbel's indication that he would not accept it if it were returned.

Gimbel executed a written notice of rescission on July 27, 1978, seeking to rescind the purchase agreement in accordance with Section 51–07–07, N.D.C.C. This notice was received by Kuntz on July 28, but he contends that Gimbel has no basis for rescission.

On November 28, 1978, Gimbel commenced this action by service of a summons and complaint upon Kuntz. Gimbel sought to revoke and rescind the contract to purchase the tractor on the ground that it was unfit for the purpose for which it had been purchased, namely, to pull a large, round baler. In the alternative, he sought damages equivalent to the difference in value between a new 1977 Model 285 Massey-Ferguson tractor and a new 1978 model, plus costs and disbursements. In his answer, Kuntz denied that Gimbel was entitled to rescission under the terms of Section 51–07–07, N.D.C.C., and alleged that the tractor was fit to pull Gimbel's new round baler.

After a change of venue, the action was tried without a jury in Logan County District Court on April 5, 1979. The trial court issued its findings of fact, conclusions of law, and order for judgment on April 13, 1979. The relevant parts of the conclusions of law read:

"1.

"The defendant did make the necessary repairs to the tractor purchased by the plaintiff at no cost to the plaintiff and did act expeditiously in making said repairs.

"2.

"Plaintiff refused the use of a new tractor for operating his round baler when the tractor he purchased was in the shop for repairs.

"3.

"The tractor purchased by the plaintiff from the defendant did prove to be reasonably fit for the purpose for which it was purchased *when the tractor was in good operating condition.* [Emphasis added.]

"4.

"Repairs which were made by the defendant were made promptly and at no cost to the plaintiff.

"5.

"Plaintiff failed to submit evidence to substantiate his complaint as to the difference in value of a 1977 or a 1978 model 285 tractor.

"6.

"Rescission is denied and the plaintiff's complaint should, therefore, be dismissed without costs."

Judgment was entered in favor of Kuntz on April 16, 1979, and Gimbel appeals to this court from that judgment.

The issue to be determined is whether or not Gimbel is entitled to rescission pursuant to Section 51–07–07 of the North Dakota Century Code. More specifically, the issue is whether or not the tractor purchased by Gimbel was "reasonably fit for the purpose for which it was purchased."

Section 51–07–07, N.D.C.C., provides:

"Any person purchasing any gas or oil burning tractor, gas or steam engine, harvesting or threshing machinery, for his own use shall have a reasonable time after delivery for the inspection and testing of the same, and if it does not prove to be reasonably fit for the purpose for which it was purchased, the purchaser may rescind the sale by giving notice, within a reasonable time after delivery, to the parties from whom any such machinery was purchased, or the agent who negotiated the sale or made delivery of such personal property, or his successor, and by placing the same at the disposal of

the seller. Any provision in any written order or contract of sale, or other contract, which is contrary to any of the provisions of this section, hereby is declared to be against public policy and void."

In *Jackson v. Advance-Rumely Thresher Co.*, 62 N.D. 143, 241 N.W. 722 (1932), the constitutionality of this statute was challenged. In upholding the statute, this court set forth at length the conditions which precipitated the enactment and the purposes of the enactment of the statute. The decision was affirmed by the United States Supreme Court in *Advance-Rumely Thresher Co. v. Jackson*, 287 U.S. 283, 53 S.Ct. 133, 77 L.Ed. 306, 87 A.L.R. 285 (1932), wherein that court said:

"The object sought to be attained by the statute under consideration is to protect farmers in an agricultural state against losses from investments in important machines that are not fit for the purposes for which they are purchased and to guard against crop losses likely to result from reliance upon such machines. It applies only to sales made to purchasers requiring for their own use the relatively complicated and costly implements referred to in section 1. These are used on farms producing grain, and the raising of such crops is North Dakota's principal industry. Enormous quantities of farm machinery are required in that state, and expenditures therefor constitute a large part of the total investment in farm land and equipment. Most, if not all, of the tractors, engines, harvesters, and threshers referred to are made outside North Dakota by a few manufacturers who, through their agents or dealers, sell them directly to farmers. Forms of sales contracts generally used are prepared by sellers, and, as pointed out in the opinion of the state Supreme Court, the tendency has been to restrict the rights of purchasers and to lessen the liability of sellers. Such machines can properly be tested only during seasons in which they are used, and, especially in the case of harvester and thresher combines, these periods are short. The machine sold to plaintiff is a gas and oil-burning harvester and thresher combine. Machines designed for such purposes are necessarily complex, and even under favorable conditions their effective use requires skill, experience, and resourcefulness on the part of operators. *In determining whether they are reasonably suitable and fit for the purposes intended, there is involved a consideration of the kind and condition of the crops to be harvested, the periods during which they remain recoverable after becoming sufficiently ripe and dry to be contemporaneously cut and threshed, the amount and kind of weeds and other foreign vegetation growing with the grain, the topography of the fields, and the rainfall, dew, and humidity.* Such combines have not been long known or much used in the grain-raising Northwest, and undoubtedly there are ample grounds for a legislative finding that the farmers of North Dakota as a class are not sufficiently familiar with them to be able, without actual test, to form an intelligent opinion as to their fitness to cut and thresh in a single operation or whether they safely may be regarded as dependable for use on their farms. If they were relied on generally in that state and should fail in the fields, the resulting losses would be of such magnitude and public concern as to warrant the adoption of measures calculated to guard against them. [Emphasis added.]

"The regulation imposed seems well calculated to effect the purposes sought to be attained. The evils aimed at do not necessarily result from misrepresentation or any fraud on the part of sellers, and at least one of the purposes of the legislation is to lessen losses resulting from purchasers' lack of capacity, without opportunity for inspection and trial, to decide whether the machines are suitable. The statute prevents waiver of the warranty of fitness implied by the state law. Such warranties tend to restrain manufacturers from selling unfit or defective machines and also from selling any—even those of appropriate design and construc-

tion for operation in some regions—for use in places or under conditions not permitting effective service. And the right of inspection, test, and rescission that the statute assures to purchasers enables them, free from peril of serious mistakes, deliberately to consider whether such machines are reasonably suitable or fit for the purposes for which they want to use them." 287 U.S. at 289–90, 53 S.Ct. at 134–35, 77 L.Ed. at 309–10.

The right to rescind a contract pursuant to the provisions of Section 51–07–07, N.D.C.C. (formerly Section 5991a), has been recognized and addressed by this court numerous times in the past. *See Hoffman Motors, Inc.. v. Enockson*, 240 N.W.2d 353 (N.D.1976); *Boe v. Thorburn Herseth, Inc.*, 134 N.W.2d 33 (N.D.1965); *International Harvester Co. of America v. Olson*, 62 N.D. 256, 243 N.W. 258 (1932). Under this statute, the purchaser of a tractor has a reasonable time after delivery to inspect and test the machine. If it does not prove to be reasonably fit for the purpose for which it was purchased, the law grants the purchaser the right to rescind by giving notice, within a reasonable time, to the seller, and by placing the tractor at the disposal of the seller. Furthermore, one who has the right to rescind may delay the exercise of that right on condition that the property be made fit, and if the condition is not complied with, he may thereafter rescind. But see the possible result of such an election in *Northwestern Equipment v. Tentis*, 74 N.W.2d 832 (N.D.1956).

In the instant case, Gimbel gave Kuntz verbal notice of rescission within three days after the tractor broke down the second time, and he served a formal, written notice of rescission on Kuntz shortly thereafter. This court has said that the notice of rescission may be either oral or written, and may be served upon the seller's agent. *Jesperson v. Advance-Rumely Thresher Co.*, 61 N.D. 494, 240 N.W. 876 (1932). The notice of rescission came after Gimbel had used the tractor for only twenty to twenty-five hours, during which time it had broken down twice. The breakdowns were the re-

sult of a latent defect caused by a piece of bolt of spurious origin which had damaged the transmission gears through no fault of Gimbel.

Whether or not the notice of rescission was timely is a question of fact for the jury or factfinder to determine. *Jesperson v. Advance-Rumely Thresher Co.*, 61 N.D. at 502, 240 N.W. at 879.

It certainly cannot be contended, and it is not contended, that Gimbel failed to act within a reasonable time after delivery of the tractor. As the trial court said at the conclusion of the trial:

"The Court would have to state that the notice of rescission, while it need not be in writing under the provisions of 51–07–07, was timely. One cannot state that Mr. Gimbel was in anyway dilatory."

Therefore, the primary issue to be resolved is whether or not the tractor was reasonably fit for the purpose for which it was purchased, not after it was repaired the second time, but at the time the notice of rescission was made. The record indicates that the trial court had some difficulty with this question, as evidenced by its comments at the close of the trial:

"Now in this particular case the tractor proved to be useable during the period of time that it was operable for the purpose for which it was intended. Therein lies the difficulty for the Court. It is a play on words, I guess, but the tractor when operable proved to be reasonably fit for the purpose for which it was purchased. But the tractor did breakdown on two occasions in a relatively short period of time, then of course during that period of time it was not fit for any purpose. So I guess the Court has to look at the reasonableness of the particular proceedings here and determine whether or not 51–07–07 is applicable.

\*    \*    \*    \*    \*    \*

"The Court in this case is going to rule that the rescission will not lie on the grounds and for the reasons that the machine did perform as alleged and as it was intended to perform, in this case to pull a

round baler. There were two breakdowns that incapacitated the machine during a period of time when the plaintiff wanted to utilize the machine, but repairs were effected and made promptly and that it would perhaps behoove Mr. Gimbel to take the machine the second time and use it."

In concluding that Gimbel was not entitled to rescission, the trial court relied on the fact that Kuntz went out of his way to accommodate Gimbel during the two instances the tractor was in the implement shop for repairs. Gimbel conceded that he had no complaints about the service, and that he was not billed for the parts installed or the labor expended in remedying the defect in the tractor. All parts and labor were covered under the Massey-Ferguson warranty that accompanied the sale.

However, Section 51–07–07, N.D.C.C., is silent with respect to a seller's good faith efforts to accommodate a buyer in remedying the "unfitness" of a particular piece of machinery. Although the statute is silent in this respect, this court has said:

".  .  . the statute not only insures to the purchaser of the machinery designated the right to ascertain its fitness, but it also prescribes and insures the remedy that he shall have in case it proves to be unfit." *Uhrig v. J. I. Case Threshing Mach. Co.*, 64 N.D. 189, 199, 250 N.W. 922, 926 (1933).

■ The purchaser of a tractor designated in Section 51–07–07, N.D.C.C., has a reasonable time after delivery to inspect and test the tractor to determine if it is reasonably fit for the purpose for which it was purchased. We believe that the term "reasonably fit for the purpose for which it was purchased" has to mean that the tractor is free of serious defects which would render it inoperable, and that, under ordinary and reasonable operating conditions, the tractor will perform as intended and expected.

■ Certainly, every mechanical failure in a new and complex machine does not render the machine unreasonably fit for the purpose for which it was purchased. *See*

*Fargo Mach. & Tool Co. v. Kearney & Trecker Corp.*, 428 F.Supp. 364 (E.D.Mich. 1977). Mechanical failures in new machines are to be expected, and no buyer is absolutely entitled to a break-in period that is completely free of the need for service. So at the outset, it may be necessary to distinguish between defects which merely require minor repair to correct, and significant defects which render the machine inoperable, and remain after the seller has been afforded a reasonable opportunity to correct.

■ As previously stated in this opinion, it is a question of fact as to whether or not the notice of rescission under Section 51–07–07, N.D.C.C., was timely. Similarly, it is also a question of fact as to whether or not a tractor is "reasonably fit for the purpose for which it was purchased." *Bratberg v. Advance-Rumely Thresher Co.*, 61 N.D. 452, 487, 238 N.W. 552, 567–68, 78 A.L.R. 1338 (1931). *See Huddell v. Levin*, 537 F.2d 726, 740 (3rd Cir. 1976).

■ In *Hoffman Motors, Inc. v. Enockson, supra* at 355–56, this court, faced with the same issue, said:

"Even though it was labeled a conclusion, the trial court found as a fact that the tractor was not fit for farm work, the purpose for which it was purchased. There was ample evidence to support this finding and we do not find it clearly erroneous."

Labels placed upon the findings by the trial court are not conclusive. Whether or not a particular finding is a finding of fact or a conclusion of law is to be determined by the reviewing court. *Rummel v. Rummel*, 265 N.W.2d 230 (N.D.1978).

■ As earlier indicated, the trial court in the instant case found that:

"3.

"The tractor purchased by the plaintiff from the defendant did prove to be reasonably fit for the purpose for which it was purchased when the tractor was in good operating condition."

We believe that conclusion No. 3 discloses that the trial court had an erroneous view of the law. The admitted defect, which seriously damaged the transmission gears, rendered the tractor inoperable. On the second breakdown, it did not merely perform badly, but it failed to perform at all. It had to be pulled in reverse in order to unlock the gears and then was hauled into the shop for repair. More time was spent trying to repair the tractor than was spent pulling the baler, the purpose for which the tractor was purchased. In our view, the test is not how the machine operates when in "good operating condition" between breakdowns, but how it performs throughout the entire testing period. For these reasons, the conclusion that the tractor was reasonably fit for the purposes for which it was intended is clearly erroneous.

Section 51–07–07, N.D.C.C., may be compared with the protections now afforded buyers under the warranty provisions of the Uniform Commercial Code, Title 41 of the North Dakota Century Code. *See* Sections 41–02–30, 41–02–31, and 41–02–32, N.D.C.C. (U.C.C. §§ 2–313, 2–314, 2–315). The Uniform Commercial Code provides for recovery in warranty for all types of loss resulting from unmerchantable products, without regard to fault.

The rationale for the enactment of the warranty provisions in the Uniform Commercial Code is to hold sellers responsible for inferior products passed along to unsuspecting buyers. For example, once a buyer shows that goods delivered were not of a merchantable quality, *i. e.*, not fit for the ordinary purposes for which such goods are used, *see* Section 41–02–31(2)(c), N.D.C.C. (U.C.C. § 2–314(2)(c)), or that the goods were not fit for a particular purpose which the seller had reason to know of at the time of contracting, *see* Section 41–02–32, N.D.C.C. (U.C.C. § 2–315), the buyer is entitled to recover damages for breach of warranty. The only exculpatory relief afforded a seller is to show that the implied warranties were modified or excluded in accordance with the specific language enunciated in Section 41–02–33, N.D.C.C. (U.C.C. § 2–316).

In the case now before this court, Gimbel need not rely on any express or implied warranties granted by the U.C.C. Instead, he may rely on the express provisions of Section 51–07–07, N.D.C.C. This statute affords buyers even more protection than that provided for by the applicable provisions of the Uniform Commercial Code because:

(1) Section 41–02–02, N.D.C.C. (U.C.C. § 2–102) provides that Chapter 41–02 does not "impair or repeal any statute regulating sales to consumers, farmers or other specified classes of buyers." Therefore, Section 51–07–07, N.D.C.C., is given full force and effect, and

(2) Disclaimers, by virtue of provisions of Section 51–07–07, N.D.C.C., are specifically declared to be void and contrary to public policy. The right to rescind is, therefore, absolute if the requisite elements of the statute have been satisfied.

This court, in *Hoffman Motors, Inc. v. Enockson, supra* at 355, apparently recognized that these two factors give purchasers of tractors "super" protection, when it said:

"This interpretation may make it impossible to include a complete disclaimer in a sales agreement for tractors and harvesting machinery but this is the effect of § 51–07–07."

We realize that Section 51–07–07, N.D.C.C., imposes a great burden upon an implement dealer. In this case, the burden seems especially harsh in light of the efforts of the seller to accommodate the buyer in making the necessary repairs, and in offering to acquire a replacement tractor for the buyer to use, free of charge, while the defective tractor was in the shop being repaired. On the other hand, had the buyer accepted a return of the tractor after the second repair, and it had again broken down later, he may have placed himself in a position similar to the buyer in *Northwestern Equipment v. Tentis, supra*, where, partly because of his delay in rescinding, relief was denied him under Section 51–07–07, N.D.C.C.

It may be argued that farmers today are adequately protected from losses resulting

from defective machinery by the express and implied warranty provisions of the Uniform Commercial Code. However, as Justice Pederson said in *Hoffman Motors, Inc. v. Enockson, supra* at 355:

"If the protection afforded by this statute is deemed inappropriate for the modern, educated farmer, it is up to the Legislature, not the court, to modify or repeal it."

For the reasons stated herein, we conclude that the tractor purchased by Gimbel from Kuntz was not reasonably fit for the purpose for which it was purchased, and therefore Gimbel was entitled to rescind the purchase agreement in accordance with Section 51–07–07, N.D.C.C. The judgment of the district court is reversed, and the case is remanded for a determination of the damages to be awarded pursuant to this opinion.

SAND, PAULSON, PEDERSON and VANDE WALLE, JJ., concur.