**NORTHWESTERN EQUIPMENT, Inc.,**
Plaintiff and Appellant,

v.

**Leo J. TENTIS, Defendant and Respondent.**

No. 7550.

Supreme Court of North Dakota.

Feb. 3, 1956.

Nilles, Oehlert & Nilles, Fargo, for plaintiff and appellant.

J. K. Murray, Bismarck, for defendant and respondent.

MORRIS, Judge.

This is an action upon two conditional sales contracts for the replevin of two tractors and some equipment connected therewith. The defendant answered denying plaintiff's right to possession of the prop-

erty; alleged a rescission of the contracts of sale; and counterclaimed for repairs in the sum of $6,000 on the item known as the International Harvester tractor and for repairs and labor in the sum of $5,000 on the item known as the Allis-Chalmers tractor. He also alleged that he is entitled to all the purchase price paid, together with all moneys paid out in attempting to make the tractors and equipment work, and that in addition he lost $6,500 by reason of lost time and money paid out for a stand-by crew by reason of the tractors not being fit to operate and work, making an overall total of $32,468.75, upon which he would allow the plaintiff $3,000 for net benefits to the defendant, thereby leaving a net balance due from the plaintiff to the defendant of $29,468.75, for which the counterclaiming defendant prays judgment. To this counterclaim the plaintiff filed a reply.

The jury found in favor of the plaintiff with respect to the Allis-Chalmers tractor. It is thereby eliminated from consideration on this appeal.

On September 26, 1952, the plaintiff, as lessor, entered into a rental agreement with the defendant, as lessee, whereby the lessor rented to the lessee for a minimum term of four months

"One Used reconditioned International TD-24 Crawler Tractor. Tractor Serial Number #876. Engine Serial Number #910.

"One New Bucyrus Erie 24 G Bullgrader for rear mounted Winch less A Frame and Blade. Bullgrader Serial Number #98807.

"One new Bucyrus Erie P-29 Winch double drum rear mounted. Winch Serial Number #92889."

The lessee agreed to pay an aggregate rental of $7,958.48. The agreement also provided that at any time within the four month period and while the lessee was not in default he should have

"the option to purchase said equipment for the sum of $19,896.23 less any and all rentals that have been paid by Les-

see, plus an interest charge of 6% simple interest on deferred payments on the unpaid balances of the purchase price from date of delivery."

On the date of this agreement the property therein described was delivered to the defendant at Fargo. He transported it to Mandan and used it on various jobs in that vicinity until it was repossessed, except for about a month when it was in a shop for repairs.

According to defendant's evidence defects in the tractor became apparent shortly after delivery. On October 5, 1952, he complained to the plaintiff's sales representative, Miller, about the clutch and clutch housing. Emil Tentis, brother of the defendant, operated the tractor in October 1952. He testified that the final drive and rollers were leaking, the clutch was sticking, and it was hard to shift. After the motor had been warmed up it had a loud knock. The seals on the rollers were worn out and would not hold grease. The steering apparatus leaked and the clutch was dragging. He knew of these defects after he had operated the machine for one eight hour shift and told the defendant about it.

Despite defendant's knowledge of the defects in the tractor he exercised his option and bought it on December 29, 1952. He entered into a conditional sale contract whereby he agreed to pay $22,817.05, upon which he was credited with the sum of $7,958.48 as an initial payment. This was the amount of rental provided in the rental agreement. The balance of $14,858.57 he agreed to pay in twelve monthly installments of approximately $1,235 on the fifteenth of each month from June to November inclusive of 1953 and from June to November inclusive of 1954. Title was retained by the plaintiff. Above the defendant's signature at the end of the contract appears this statement in black type:

"No oral agreement, guaranty, representation, or warranty, past, present or future, respecting said equipment or our obligations hereunder, shall bind you or your assigns."

The defendant paid to the plaintiff various sums from time to time, the last payment being a major portion of the monthly installment due August 15, 1953. It was stipulated that the total amount that the defendant paid the plaintiff was $12,214.83. The defendant also contends that he paid substantial amounts for repairs and labor on this tractor. The evidence shows that the repairs that he made were extensive. However, the exact cost is difficult to determine because of the failure of the record to show which of the parts furnished and repairs made apply to the International tractor and which apply to the Allis-Chalmers tractor.

After purchasing the property under the conditional sale contract the defendant continued to complain that the operation of the tractor was unsatisfactory. However, he continued to use it until in August 1953, at which time he was in default. On August 12, 1953, the parties entered into a further agreement in writing wherein the plaintiff, in consideration of certain specified assignments totaling $4,610.20, stated:

"We agree to make the following necessary repairs on one (1) International TD-24 tractor now in your possession.

"1—Replace old radiator
2—Replace three (3) fan pulleys
3—Agree to absorb labor cost on clutch installation already performed
4—Agree to absorb labor and parts cost on repairs previously made on the right final drive
5—Agree to make necessary repairs on left final drive
6—Agree to absorb cost on complete set of pins and bushings which are now in your possession
7—Agree to absorb labor and parts cost on hydraulic steering system already performed."

Pursuant to this agreement the tractor was taken to the Schultz machine shop in Bismarck where the repairs were made at the expense of the plaintiff. When the tractor left the machine shop it was in good working order. It was released to the defendant about September 28, 1953. The defendant started to use the tractor on a job at the Delzer Cement Plant where it was seized in this action by the sheriff of Morton County on October 6, 1953. At the time of seizure the September 15th installment was in default and also a slight additional amount, making in all $1,350.57 as of October 1, 1953.

The case was tried and the jury was instructed upon the theory that the defendant claimed to have rescinded the contract of sale and to be entitled to a return of the payments that he had made, plus the cost of repairs and labor expended by the defendant in attempting to make the tractor work. The court read Section 51-0707, NDRC 1943 to the jury. It found for the defendant

"for a rescission of the contract in favor of the defendant and assess his damages and the amount he is entitled to recover in the sum of Seven Thousand Nine Hundred & Fifty Eight 48/100 ($7958.48) Dollars, on the International TD-24 tractor and equipment."

The amount found by the jury was the exact amount shown by the conditional sale contract as the initial payment. This in turn was the exact amount of the aggregate rental for four months provided in the rental agreement.

 Defendant bases is claim to the right to rescind on Section 51-0707 which provides that any person purchasing a gas or oil burning tractor for his own use shall have a reasonable time after delivery for the inspection and testing of the same, and if it does not prove to be reasonably fit for the purpose for which it was purchased may rescind the sale by giving notice within a reasonable time after delivery to the seller or the agent who negotiated the sale or made delivery, or his successor, and by placing the same at the disposal of the seller. It further states that any provision in a written order or contract of sale or other contract which is contrary to the provisions

of this section is declared to be against public policy and void.

The defendant testified that within three or four days after receiving the tractor under the rental agreement he discovered defects in the motor, the rollers, the final drive, and the clutch and about a week later notified the plaintiff. He says that a representative of the plaintiff came to see the defendant and told him that the plaintiff would repair the tractor or take it back and refund the defendant's money. He also testified that similar promises were made by the representatives of the plaintiff, both before and after the defendant exercised his option and purchased the tractor under the conditional sale contract on December 29, 1952.

The defendant used the tractor on ten jobs during the rental period and prior to its purchase. This use included plowing, deep land plowing, putting in a culvert for Morton County, repairing a stock dam, digging a drainage ditch, land leveling, and road work. During that time he earned with the use of the tractor approximately $6,000. He accomplished this work with the tractor in its claimed defective condition, although he did some repair work on it during that time. After using the tractor for four months he exercised the option to purchase it but he contends that he did so relying on the oral promises of representatives of the plaintiff to make the tractor work. Yet he signed a conditional sale contract in which he agreed that no such oral agreement should bind the plaintiff.

Defendant also contends that similar promises were made by the plaintiff's representatives after the conditional sales contract was entered into to either take the tractor back or make it work. This is categorically denied by plaintiff's witnesses but the jury believed the defendant for they found there was a rescission. The defendant points to these subsequent promises to make the tractor fit to save himself from the requirement of the statute that rescission must be made within a reasonable time after delivery of the property. Under Section 51-0707 one who has the right to rescind a contract for the purchase of personal property on the ground that the same was not reasonably fit for the purposes for which it was purchased may delay the exercise of a right of rescission on condition that the property be made fit and if the condition is not complied with may thereafter rescind provided he does so within a reasonable time after the failure of the seller to comply with the conditions. Dwinnell v. Boehmer, 60 N.D. 302, 234 N.W. 655; Bratberg v. Advance-Rumely Thresher Co., 61 N.D. 452, 238 N.W. 552, 78 A.L.R. 1338. But a purchaser must have a right to rescind before it can be saved to him by a promise on the part of the seller to make fit. The defendant has pointed out no evidence and we have found none that would indicate that the tractor was less fit to do defendant's work after December 29, 1952, than it was during the four months that it was in defendant's possession under the rental agreement. No new or latent defects appeared. The defendant's difficulties in operating it were much the same in the spring of 1953 as they were in the fall of 1952. He operated it on various jobs until August 1953 when the plaintiff, in consideration of the payment of certain delinquencies by the defendant, agreed in writing to make specific repairs. These repairs were made in accordance with the contract and the tractor returned to the defendant during the last days of September although a further installment had become due September 15, 1953, in the sum of $1,235. The defendant failed to meet this installment and a small sum which was due in addition and the plaintiff repossessed the tractor in this action. There is no evidence regarding defects in the tractor or in its operation after it was returned to the defendant other than his general statement that it didn't work and he told the plaintiff to take it back.

Section 51-0116 provides that:

"Subject to the provisions of this chapter and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows:

"1. Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he is the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for that purpose;
* * *

"3. If the buyer has examined the goods, there is no implied warranty as regards the defects which such examination ought to have revealed; * *."

In Section 51–0170 we find that:

"3. Where the goods have been delivered to the buyer, he cannot rescind the sale if he knew of the breach of warranty when he accepted the goods,
* * *."

Section 51–0707 NDRC 1943 does not of itself create a warranty but assures to a purchaser of property therein described a reasonable time after delivery for the inspection and testing to determine whether or not it complies with the warranty of fitness prescribed by Section 51–0116, subd. 1. It also prohibits any agreement waiving the implied warranty of fitness and specifically provides for the remedy of rescission. This remedy it affords to the purchaser for a reasonable time after he has had an opportunity for inspection and testing. The statute was clearly not intended to apply to defects in machinery or failures or inadequacies in operation of which the purchaser was aware at the time of purchase.

The defendant's claim to the right to rescind under the provisions of Section 51–0707, NDRC 1943 must fail because that section is not applicable to this transaction and the remedy of rescission provided by it is not available to him.

In Jackson v. Advance-Rumely Thresher Co., 62 N.D. 143, 241 N.W. 722, the constitutionality of this statute was challenged on the ground that it abridged freedom of contract and violated the due process law of the 14th amendment to the United States Constitution. In upholding the validity of this statute this court set forth at length the conditions and purposes that actuated the legislature in enacting the statute. Our decision was affirmed by the United States Supreme Court in Advance-Rumely Thresher Co. v. Jackson, 287 U.S. 283, 53 S.Ct. 133, 134, 77 L.Ed. 306, 87 A.L.R. 285. The purposes of the statute were again set out by the United States Supreme Court.

"The object sought to be attained by the statute under consideration is to protect farmers in an agricultural state against losses from investments in important machines that are not fit for the purposes for which they are purchased and to guard against crop losses likely to result from reliance upon such machines. It applies only to sales made to purchasers requiring for their own use the relatively complicated and costly implements referred to in section 1. These are used on farms producing grain, and the raising of such crops is North Dakota's principal industry. Enormous quantities of farm machinery are required in that state, and expenditures therefor constitute a large part of the total investment in farm land and equipment. Most, if not all, of the tractors, engines, harvesters, and threshers referred to are made outside North Dakota by a few manufacturers who, through their agents or dealers, sell them directly to farmers. Forms of sales contracts generally used are prepared by sellers, and, as pointed out in the opinion of the state Supreme Court, the tendency has been to restrict the rights of purchasers and to lessen the liability of sellers. Such machines can properly be tested only during seasons in which they are used, and, especially in the case of harvester and thresher combines, these periods are short. The machine sold to plaintiff is a gas and oil-burning harvester and thresher combine. Machines designed for such purposes are necessarily complex, and even under favorable conditions their effec-

tive use requires skill, experience; and resourcefulness on the part of operators. In determining whether they are reasonably suitable and fit for the purposes intended, there is involved a consideration of the kind and condition of the crops to be harvested, the periods during which they remain recoverable after becoming sufficiently ripe and dry to be contemporaneously cut and threshed, the amount and kind of weeds and other foreign vegetation growing with the grain, the topography of the fields, and the rainfall, dew, and humidity. Such combines have not been long known or much used in the grain-raising Northwest, and undoubtedly there are ample grounds for a legislative finding that the farmers of North Dakota as a class are not sufficiently familiar with them to be able, without actual test, to form an intelligent opinion as to their fitness to cut and thresh in a single operation or whether they safely may be regarded as dependable for use on their farms. If they were relied on generally in that state and should fail in the fields, the resulting losses would be of such magnitude and public concern as to warrant the adoption of measures calculated to guard against them.

"The regulation imposed seems well calculated to effect the purposes sought to be attained. The evils aimed at do not necessarily result from misrepresentation or any fraud on the part of sellers, and at least one of the purposes of the legislation is to lessen losses resulting from purchasers' lack of capacity, without opportunity for inspection and trial, to decide whether the machines are suitable. The statute prevents waiver of the warranty of fitness implied by the state law. Such warranties tend to restrain manufacturers from selling unfit or defective machines and also from selling any— even those of appropriate design and construction for operation in some regions—for use in places or under conditions not permitting effective service.

And the right of inspection, test, and rescission that the statute assures to purchasers enables them, free from peril of serious mistakes, deliberately to consider whether such machines are reasonably suitable or fit for the purposes for which they want to use them. There is nothing in this case to suggest that, under the guise of permissible regulation, the state unreasonably deprives sellers of such machines of their right freely to contract or that in its practical operation the statute arbitrarily burdens their business. [Jay] Burns Baking Co. v. Bryan, 264 U.S. 504, 44 S.Ct. 412, 68 L.Ed. 813, 32 A.L.R. 661; Weaver v. Palmer Bros. Co., 270 U.S. 402, 46 S.Ct. 320, 70 L. Ed. 654. The state, in order to ameliorate the evils found incident to waivers of implied warranties of fitness, merely declares that such agreements in respect of the sale of the designated machines are contrary to public policy, and holds the parties to the just and reasonable rule prescribed by section 15(1) of the Sales Act. Upon the question of due process more need not be said.

"The character of the machines, the need of tests to determine their fitness, the serious losses that ensue if in actual use they prove unfit and the other considerations alluded to plainly warrant the classification and special regulation of sales prescribed by the statute."

Section 51–0707 was never intended to require a warranty of fitness against defects of material or performance of which the purchaser was aware at the time the contract was made to be read into the contract of purchase or to give the purchaser a right to rescind the contract because of such defects.

■ We would make further comment with reference to defendant's testimony to the effect that both before and after the execution of the conditional sale contract plaintiff's representatives promised that they would repair the defects complained

of and make the tractor work or take it back. The contract contained a specific negation of all oral agreements which we have heretofore quoted. The execution of a contract in writing supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the contract. Section 9–0607, NDRC 1943. Jensen v. Siegfried, 66 N.D. 222, 263 N.W. 715; Larson v. Wood, 75 N.D. 9, 25 N.W.2d 100; Clark Implement Co. v. Priebe, 52 S.D. 606, 219 N.W. 475.

Section 9–0906, NDRC 1943 provides:

"A contract in writing may be altered by a contract in writing or by an executed oral agreement and not otherwise."

These rules are not rules of evidence but of substantive law. Williston on Contracts, Revised Edition, Section 631. The jury might find as a fact that the oral promises were made but their finding in that respect could not change the contract. The legal effect of the oral testimony is for the court to determine as a matter of law. In this connection it should be noted that the plaintiff did subsequently agree in writing to make certain repairs on the tractor and performed that agreement. In that respect only was the original contract of sale modified.

■ The defendant challenges our right to review the sufficiency of the evidence in any respect because of claimed defects in procedure. At the close of all the evidence the plaintiff made a motion for a directed verdict and after the verdict was rendered on December 8, 1954, made a motion for a judgment notwithstanding the verdict or for a new trial. Notice of this motion was served on defendant's attorney by mail on December 17, 1954. This notice specified January 12, 1955, as the date of hearing. It was filed with the clerk of the district court of Morton County on December 20, 1954. The motion could not be heard on the date set because the trial judge was engaged in holding a court term in another county. Instead of securing a continuance of the hearing on the motion from the time set in the notice to another date, plaintiff served an amended notice of motion on defendant's attorney on January 3, 1955, naming March 15, 1955, as the date on which the motion would be heard. Because of illness of defendant's counsel it was later stipulated that the motion be heard on April 12, 1955. This stipulation provided that it was "all without prejudice to any objections of the defendant." At the hearing on the motion on April 12, 1955, the defendant objected to the jurisdiction of the court to hear and consider the motion on the ground that it was not made within ten days after rendition of the verdict. This objection is based on Section 28–1510, NDRC 1943, as amended by Chapter 204, SLND 1951, which in part provides:

"Within ten days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment notwithstanding the verdict entered in accordance with his motion for a directed verdict, * * *."

We will not lengthen this opinion by attempting to unravel this procedural snarl for if the defendant is correct in his contention that the court was without jurisdiction to hear the motion for judgment notwithstanding the verdict and that the proceedings taken thereon were void and of no avail there remains the appeal from the judgment to be considered.

The plaintiff in addition to appealing from the trial court's order denying its motion for judgment notwithstanding the verdict has also appealed from the judgment and specified as error on that appeal the denial by the court of its motion for a directed verdict at the close of all the evidence. Therefore, if the proceedings on the motion for judgment notwithstanding the verdict are void, we will still review the court's ruling on the motion for directed verdict on the appeal from the judgment. Kinnischtzke v. City of Glen Ullin, 79 N.D. 495, 57 N.W.2d 588.

The defendant further argues that the motion for directed verdict is insufficient in form and scope to warrant a review of the evidence on appeal under the rule which requires that such a motion shall point out and state the particulars wherein the evidence is insufficient. Jacobs v. Bever, 79 N.D. 168, 55 N.W.2d 512; Westerso v. City of Williston, 77 N.D. 251, 42 N.W.2d 429.

The plaintiff based its motion for directed verdict chiefly on these stated grounds: that no warranty had been shown; that if any warranty was shown the same was not breached; and that any warranty that may have been proven was waived by the failure of the defendant to give reasonable notice and return the tractor within a reasonable time after discovery of the defects. These grounds, while meager as to detail, we regard as sufficient to advise the trial court and opposing counsel of the contentions of the plaintiff with respect to the insufficiency of the evidence. See Nicholson v. Roop, N.D., 62 N.W. 2d 473, 43 A.L.R.2d 1041. In our review we have considered the evidence with respect to these grounds. As to the first ground we have concluded that there was no warranty of fitness nor could there be such a warranty under the evidence here presented with the result that Section 51-0707, NDRC 1943 is not applicable to this transaction and the defendant could not avail himself of a right of rescission thereunder.

There being no right of rescission on the part of the defendant, the verdict cannot stand and the judgment appealed from is reversed.

BURKE, C. J., and SATHRE, JOHNSON and GRIMSON, JJ., concur.