W. S. DWINNELL, Appellant, v. H. G. BOEHMER, Respondent.

(— A.L.R. —, 234 N. W. 655.)

Opinion filed January 5, 1931.

*Traynor & Traynor,* for appellant.

*H. W. Swenson* and *Shepherd D. Wheat,* for respondent.

NUESSLE, J. Plaintiff sold a tractor to the defendant and took a mortgage on it for the unpaid portion of the purchase price. He seeks in this action to foreclose such mortgage. Defendant, resisting, claims the tractor was defective and valueless and alleges that there was no consideration for the payment made. He seeks a rescission of the contract of purchase; for a cancellation of his notes and mortgage; and for a return of that portion of the purchase price paid by him.

The facts as disclosed by the record may be skeletonized thus: The plaintiff is engaged in the business of manufacturing and selling tractors under the name and style of the Gray Tractor Company. His place of business is at Minneapolis, Minnesota. The defendant is a farmer residing in Ramsey County, North Dakota. In the fall of 1928, plaintiff's salesman, one Storlie, talked to the defendant concerning the sale of a tractor and plow. The defendant was interested and finally he agreed to buy a rebuilt tractor and plow. Storlie produced and filled out a printed form of order and agreement used by the plaintiff in the sale of tractors, and the defendant agreed to the terms thereof and signed the same. Storlie then sent it forward to the plaintiff for his approval as Storlie had no authority to bind the plaintiff. As set out in this instrument the price of the tractor was $1250, and the plow $100. The defendant was to pay the freight. The purchase price was to be paid according to the terms of two notes: one for $675, due October 1, 1928; and one for $675, due October 1, 1929, such notes to be secured on the machinery. Among other things, this instrument provided:

"It is further agreed that this order and agreement is given and accepted and the sale and purchase of said tractor, fixtures and equipment are made upon the express condition that this order and agreement contains all the terms and conditions of sale and purchase of said tractor, fixtures and equipment and cannot in any manner be changed, altered or modified without the written consent of the officers of said Company. The Company shall not be responsible for any delay in

shipping said tractor caused by accident, strikes or other unavoidable circumstances, and that this order and agreement is not to be binding upon the Company until approved by the said Company by a duly authorized representative thereof signing the same.

"I, (the purchaser) understand and agree that this order and the warranty printed below constitute the only conditions, either expressed or implied, upon which this order is placed, and also that the order shall not be binding on your Company until accepted by it in writing."

The warranty above referred to reads as follows:

"We, (the vendor) warrant each rebuilt tractor manufactured by us to be free from defects in material and workmanship under normal use and service, our obligation under this warranty being limited to making good at our factory any part or parts thereof which shall, within one year after delivery of such tractor to the original purchaser, be returned to us with transportation charges prepaid, and which our examination shall disclose to our satisfaction to have been thus defective; this warranty being expressly in lieu of all other warranties expressed or implied and of all other obligations or liabilities on our part, and we neither assume nor authorize any person to assume for us any other liability in connection with the sale of our tractor."

Storlie submitted this order to the plaintiff. Plaintiff, however, refused to accept it on the terms of payment as therein contained and advised Storlie that there would have to be a cash payment. Accordingly Storlie again interviewed the defendant, told him the plaintiff's requirements, and defendant, needing the tractor, agreed to pay $300 cash on delivery thereof. Thereupon Storlie endorsed the words "Cash, $300" across that portion of the contract devoted to the statement of the terms of payment. Storlie at once wired the plaintiff as to this change in the order and the plaintiff, satisfied therewith, shipped the tractor and plow. The machinery arrived at the defendant's railway station and defendant was notified. He went in, made a payment of $350 to cover the cash payment and freight, and executed the notes and mortgage aggregating $1050 pursuant to the terms of the amended order. The machinery was then unloaded. The defendant was not satisfied with the plow, saying that the beam was too light. Plaintiff, however, persuaded him to permit a demonstration. On September 17th or 18th the tractor and the plow were taken out to defendant's

farm and operations were begun. The defendant refused to accept the plow and plaintiff agreed to take it back and give credit for the purchase price thereof on the notes. Defendant retained the tractor. In order that defendant might learn to operate it plaintiff's agents remained and helped him with it for three days. Then they departed. Defendant used the tractor for about fifteen days and seemed satisfied with it. He plowed in all 180 or 200 acres. Came settlement time and plaintiff demanded payment of the note then due. Defendant put him off for some time and finally, about the latter part of October, said that the tractor was defective in numerous respects. Plaintiff agreed to send a man with repairs to fix it the next spring when the weather was warmer but continued to demand payment of the past due note. It was not paid. Some correspondence took place between the parties. On February 14, 1929, defendant wrote plaintiff about the matter telling him of the defects to which he claimed the tractor was subject, and complaining generally about the transaction. On February 19, the plaintiff answered this letter saying that he was willing to meet the defendant more than half way and that all he wanted to know was that when he did his part the defendant would carry out his contract, and saying further: "Please write us that this is your intention and that you will let us know as soon as the weather is such that our man can work to advantage. Upon hearing from you we will make arrangements so that we can have any parts needed and our service man on the ground in time to get your tractor ready for the time to start your spring work." On February 23, the defendant wrote acknowledging the receipt of this letter and complaining further about the transaction. He also sent a statement as to the parts of the tractor that were defective and would require replacing. On March 15, plaintiff replied, answering the defendant's complaints. Among other things he wrote: "The quickest way for you to get your tractor in good running order is for you to make the payments as agreed and we will see that a service man calls on you at the first opportunity and assists you in putting your tractor in good shape. We believe that if you do your part this company will furnish the new parts up to a certain limit with no charge to you, but we feel sure they will do nothing of the kind until you carry out your part of this contract." Nothing further was done about the matter until May 14 when the

instant action was begun. A warrant on foreclosure was then issued and the plaintiff caused the tractor to be seized under it. The tractor was thus taken and turned over to the plaintiff.

The case came to trial before the court without a jury. The court found for the defendant and ordered judgment in his favor cancelling the notes and mortgage and for the amount of the purchase price paid, together with interest from date of payment. Plaintiff appeals and demands a trial de novo.

A careful examination of the record convinces us that the findings of the trial court that the tractor was defective and not reasonably fit to suit the purposes for which it was purchased, is amply sustained by the evidence. We think it would be a fruitless use of time and space to comment in detail upon the evidence with respect to this phase of the case.

The plaintiff, however, relying upon the written contract as evidenced by the order and agreement signed by the defendant when the purchase of the tractor and plow was made, insists that, in any event, the defendant is limited to the express warranty therein contained and the remedy for the breach thereof therein provided, that is, that if any parts of the tractor should be defective the plaintiff would furnish new parts upon notification of the defects and surrender of the defective parts at the plaintiff's factory; that the defendant has not complied with this requirement and has no other remedy. On the other hand, the defendant insists that the transaction of purchase and sale is not evidenced by any written contract and the contract rests wholly in parol and, therefore he is entitled to wider warranties and remedies than are set out and expressed in the written contract; that, in any event, the tractor was not reasonably fit for the purposes for which it was purchased and so he could rescind the contract and that he has done so in a timely and proper manner.

Though we agree with the plaintiff that the written contract on which he relies is in effect and controls, nevertheless the judgment from which plaintiff appeals must be affirmed. It is true that the contract in question stipulates that there are no implied warranties and that the only express warranty made by the plaintiff is that the tractor is free from defects in workmanship and material under normal use and service, and that under this warranty the plaintiff is only required to

make good at its factory any part or parts of the tractor which are shown to be defective and are returned. The parties having made this contract are bound by its terms, but the provisions of § 5991a, 1925 Supplement (chapter 238, Sess. Laws 1919), must be read into the contract. See Minneapolis Threshing Mach. Co. v. Hocking, 54 N. D. 559, 209 N. W. 996; Palaniuk v. Allis-Chalmers Mfg. Co. 57 N. D. 199, 220 N. W. 638. By virtue of this statute a warranty that the tractor was reasonably fit for the purposes for which it was purchased was made available to the defendant. The defendant had a reasonable time after delivery of the tractor to him to inspect and test it. If it did not prove to be fit for the purposes for which it was purchased he had the right to rescind the sale by giving notice of his election to do so and placing the tractor at the disposal of the seller. As we have said heretofore, the tractor did not comply with the terms of this warranty. So the defendant might within a reasonable time on that account rescind the contract and tender a return of the tractor and thus be absolved from its obligations. Did he so act as to avail himself of the provisions of the statute in question? He insists that he did. Plaintiff is equally insistent that he did not.

The tractor was delivered to the defendant on the 17th or 18th of September. Plaintiff's agents helped him to operate it for three days. He continued to use it for twelve days thereafter. In all he plowed about 180 or 200 acres. At first he was satisfied with it and made no complaint. Then defects became apparent. The first purchase price note fell due on October 1st. Payment was demanded by the plaintiff shortly thereafter. Defendant put him off. A short time afterwards when plaintiff again pressed for payment, defendant told him that the tractor was not satisfactory and detailed the respects in which he claimed it was defective. Plaintiff agreed to send a man with repairs to fix it the next spring when the weather was warmer. Thereafter the correspondence heretofore referred to took place between the plaintiff and defendant. Plaintiff continued to press for payment and the defendant continued to refuse payment. Finally, plaintiff stated that he would do nothing in the way of remedying the defects in the tractor until the defendant made the payment then past due, and there the matter rested for a time. Then on May 14th plaintiff brought the instant action to foreclose his mortgage. He took the tractor under a

warrant of seizure. The defendant, by his answer, gave notice of his election to rescind. He did not need to place the tractor at the disposal of the plaintiff for the plaintiff already had it. It is true there was some delay on the part of the defendant in notifying the plaintiff of the defects in the tractor. But these defects were not immediately apparent and, in any event, the delay was not great. When defendant did complain as to the defects, the plaintiff so acted with respect to the matter as to warrant him in believing that they would be remedied. Later plaintiff insisted that payment be made before anything be done in the way of remedying them. This plaintiff had no right to do. The defendant might waive his right to rescind on condition that the tractor be made fit and when this was not done he still would have the right to rescind provided he exercised it seasonably. See Williston, Contr. § 1526, et seq. The thought underlying rescission is that the parties shall be put thereby in the same condition they were in before the rescinded contract was made. On that account a rescission must be indicated within a reasonable time after cause therefor becomes known to the party rescinding. Whether the right to rescind is exercised within a reasonable time is to be determined from all the circumstances—the chief consideration being as to whether there was so long a delay as to result in prejudice to the other party. So, considering the circumstances, it seems to us that when the plaintiff began his action on May 14th and seized the tractor, it was not then too late for the defendant to give notice of rescission. The instant case is clearly distinguishable on its facts from Minneapolis Threshing Mach. Co. v. Hocking, 54 N. D. 559, 209 N. W. 996, supra. And when defendant set forth in his answer that he deemed the contract rescinded, that was sufficient notice. See, in this connection, Sneve v. Schwartz, 25 N. D. 287, 141 N. W. 348; Black, Rescission & Cancellation, 2d ed., § 569, et seq., and cases cited; Williston, Contr. § 1469, et seq.; Williston, Sales, § 611.

The plaintiff also complains that under the terms of the judgment from which he appeals the defendant is permitted to keep the tractor as well as to recover back that part of the purchase price paid by him and to have a cancellation of his notes and mortgage. We think, however, that this complaint is not warranted. The fair effect of the judgment is that the parties are to be put as nearly as possible in statu

quo; the plaintiff to have the tractor and the consideration given by the defendant to be returned to him.

The judgment is affirmed.

BURR, BIRDZELL, and BURKE, JJ., concur.

CHRISTIANSON, Ch. J. (dissenting). Our statute provides:

"Rescission when not affected by consent can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

"1. He must rescind promptly upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence or disability and is aware of his right to rescind; and,

"2. He must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so." Comp. Laws 1913, § 5936.

In my opinion the evidence in this case shows that the defendant did not rescind promptly upon discovering the facts which he claims entitled him to rescind. In short, in my opinion, the evidence in this case shows the existence of a state of facts which renders the remedy of rescission unavailable to the defendant.