HART HONEY COMPANY, Plaintiff,
Appellee, and Cross–Appellant,

v.

Jerry CUDWORTH, Bracken Honey Bee
Corporation, and Roger Bracken, De-
fendants, Appellants, and Cross–Appel-
lees.

Civ. No. 880182.

Supreme Court of North Dakota.

Sept. 26, 1989.

Maureen Foughty White Eagle, of Foughty, Christianson & White Eagle, Devils Lake, for plaintiff, appellee, and cross-appellant.

Neil Thompson, of Thompson & Thompson (argued), Devils Lake, for defendant, appellant and cross-appellee Jerry Cudworth, and J. Thomas Traynor, Jr., of Traynor, Rutten & Traynor, Devils Lake, for defendants, appellants, and cross-appellees Bracken Honey Bee Corp. and Roger Bracken.

VANDE WALLE, Acting Chief Justice.

Jerry Cudworth and Bracken Honey Bee Corporation ["Bracken Honey"] appeal from a district court judgment awarding damages to Hart Honey Company ["Hart Honey"]. Roger Bracken appeals from a

post-trial order denying his request for attorney fees.[1] We affirm in part, reverse in part, and remand for modification of the judgment in accordance with this opinion.

Hart Honey was incorporated in 1984. During its organizational stage, Hart Honey's representatives contacted Cudworth, who was the economic development administrator and tribal planner for the Devils Lake Sioux Tribe. Hart Honey sought Cudworth's assistance in securing financing from the Bureau of Indian Affairs to start a bee and honey operation. Because the principals of Hart Honey had no experience in the bee business, Cudworth referred them to Roger Bracken for assistance.

Bracken Honey was a commercial bee business owned by Roger Bracken, Curtis Bracken, and Cudworth, in equal shares. Roger Bracken was its president and Cudworth was its secretary/treasurer. Roger Bracken and Cudworth were instrumental in securing a $100,000 BIA loan for Hart Honey.

In May 1984, Hart Honey and Bracken Honey entered into a "Sharecrop Agreement." Hart Honey was to provide sites on the reservation for the hives and supply various equipment, including "supers" for storing honey,[2] in return for a percentage of the honey, wax, and pollen produced. Bracken Honey was to provide the bees and would receive the remaining honey, wax, and pollen. In addition, Hart Honey agreed to pay Bracken Honey fees for Bracken Honey's services in producing and extracting the honey and caring for the hives. Bracken Honey was also to receive a management fee.[3]

At the time the sharecrop agreement was finalized, and into the early part of the bee season, Hart Honey had not yet received its BIA loan and did not own the equipment it was required to furnish under the share-crop agreement. Thus, Bracken Honey placed supers on the sites.

During the summer of 1984, before Hart Honey had received the proceeds of its BIA loan, Cudworth offered to sell to Hart Honey a large number of supers which he owned. Cudworth had purchased these supers for $10,000 from the bankruptcy estate of another beekeeper. At the time Bracken Honey was formed in 1982 Cudworth and the other incorporators entered into a "Pre–Corporation Agreement." Cudworth agreed to allow Bracken Honey perpetual use of this equipment for $10,-000, but Cudworth retained the right to sell the equipment at any time. If Cudworth sold the equipment he was entitled to the first $35,000 in proceeds, and Bracken Honey was to receive anything over that amount.

On July 27, 1984, Hart Honey and Cudworth entered into an agreement whereby Hart Honey purchased 4,040 shallow supers and 810 deep supers from Cudworth for $62,250. Hart Honey made numerous requests to view the equipment it had purchased and mark it with its company name but were unsuccessful in its attempts until November 1984. At that time Hart Honey's representatives viewed the equipment, which was stored at Bracken Honey's warehouse, and found it to be in an advanced state of disrepair. Hart Honey informed Cudworth and Bracken Honey that it would not take possession of the equipment and sought return of the purchase price.

Hart Honey commenced this action against Cudworth, Bracken Honey, and Roger Bracken for rescission, fraud, breach of fiduciary duty, and breach of warranty. The case was tried to the court. The trial court determined that Cudworth and Bracken Honey had breached express and implied warranties, that Hart Honey had validly revoked its acceptance of the

---

**1.** Hart Honey filed a cross-appeal from the judgment. The cross-appeal has been abandoned.

**2.** "Supers" are the wooden frames which are stacked to form the hive. They may be "shallow" supers or "deep" supers.

**3.** It appears that Bracken Honey contracted with out-of-State beekeepers to provide the bees in return for Bracken Honey's share of the honey, wax, and pollen. Thus, Bracken Honey ultimately received no share of the products but made its profit on its fees for management and services.

goods, and that Hart Honey was entitled to rescind the contract and recover the purchase price. The court also awarded Hart Honey eleven percent interest from the date of the sale. Hart Honey's claims against Roger Bracken were dismissed, and the court denied Roger Bracken's post-trial motion for attorney fees.

We read the trial court's findings and conclusions as determining that the equipment was not as Cudworth had represented it; that the condition of the equipment amounted to a breach of express and implied warranties; that this was a nonconformity with the contract which substantially impaired its value to Hart Honey; that Hart Honey properly revoked its acceptance of the equipment; and that Hart Honey was thus entitled to recover the purchase price and its interest expenses. The trial court concluded that Hart Honey had failed to prove fraud or breach of fiduciary duty.

The following issues are dispositive of the appeal:

I Was Hart Honey's cancellation of the contract effective against Bracken Honey?

II Was Hart Honey entitled to cancel its contract with Cudworth?

III Was Hart Honey entitled to eleven percent interest from the date of sale?

IV Did the trial court err in denying Roger Bracken's motion for attorney fees?

## I

■ The trial court determined that Bracken Honey was a "seller" of the equipment, and therefore was liable to Hart Honey for the purchase price and interest from the date of sale.

A "seller" is defined as "a person who sells or contracts to sell goods." Section 41–02–03(1)(d), N.D.C.C. [U.C.C. § 2–103(1)(d)]. A "sale" is "the passing of title from the seller to the buyer for a

price." Section 41–02–06(1)(d), N.D.C.C. [U.C.C. § 2–106(1)].

Bracken Honey was not a party to the contract for sale of the equipment, nor was it involved in the negotiations of sale. It was Cudworth who misrepresented the condition of the equipment and created express warranties. Hart Honey paid the full purchase price to Cudworth, and only later discovered that Bracken Honey received part of the proceeds. By the terms of the Pre–Corporation Agreement, Cudworth had retained title to the equipment. Bracken Honey received only a *contractual* right to use the equipment and share in the proceeds if it was sold.

Hart Honey argues that Bracken Honey is a seller by virtue of Section 41–02–86(1), N.D.C.C. [U.C.C. § 2–707], which defines "person in the position of a seller." Subsection 2 of Section 41–02–86, however, clearly provides that a "person in the position of a seller" may only withhold or stop delivery, resell, and recover incidental damages. The statute does not create an additional category of "sellers" who will be liable to the buyer upon breach of the contract.[4]

Under the circumstances presented, Cudworth was clearly the title owner and seller of the goods. A buyer may generally revoke acceptance of goods only as against his own seller. 1 White & Summers, Uniform Commercial Code § 8–4, at 423 (3d ed. 1988). Thus, Bracken Honey cannot be held liable to Hart Honey for the purchase price or interest. We accordingly reverse that portion of the judgment which awards damages against Bracken Honey.

## II

Cudworth asserts that the trial court erred in holding that Hart Honey was entitled to revoke its acceptance of the equipment, and challenges numerous findings of fact made by the court.[5]

4. We do not decide whether Bracken Honey was a "person in the position of a seller" under the facts presented here.

5. Actually, much of Cudworth's argument on this issue deals with his assertion that Hart

Honey accepted the goods. The trial court, however, determined that Hart Honey *did* accept the goods, but subsequently revoked its acceptance. Cudworth has apparently failed to comprehend the distinction between rejection of

Revocation of acceptance is governed by Section 41–02–71, N.D.C.C. [U.C.C. § 2–608]:

"*41–02–71. (2–608) Revocation of acceptance in whole or in part.*

"1. The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:

"a. On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

"b. Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

"2. Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

"3. A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."

 Under the statute, the questions of nonconformity with the contract, substantial impairment of value, and timely notice of revocation are matters for the trier of fact. See *Troutman v. Pierce, Inc.*, 402 N.W.2d 920 (N.D.1987); *Erling v. Homera, Inc.*, 298 N.W.2d 478 (N.D.1980). Breach of warranty may be a nonconformity which triggers the right to revoke acceptance of the goods. *Erling v. Homera, Inc., supra.*

The trial court's findings of fact establish the following scenario leading to Hart Honey's revocation of acceptance. Before the sale was finalized, Cudworth took representatives of Hart Honey to hive sites to view the supers he intended to sell them. These supers had to be viewed at a distance because they were in use, but they appeared to be in good condition. Cudworth represented that all of the equipment to be purchased was of the same type and condition.

Pursuant to the sales agreement of July 27, 1984, Cudworth was to deliver the supers to Hart Honey within two weeks so it could stencil its corporate name on them. Despite repeated requests, Cudworth did not produce the equipment or otherwise assist Hart Honey in identifying the equipment it had purchased. Throughout the autumn of 1984 Hart Honey was unable to locate or identify its equipment.

Finally, in November 1984, Hart Honey's representatives and an expert it had hired viewed the equipment at Bracken Honey's warehouse. The equipment was in an advanced state of disrepair, was worth only one-half of what Hart Honey had paid, and was unusable in its present condition. The equipment viewed on November 13 was not of the type or condition which Cudworth had shown to Hart Honey in July. Hart Honey gave timely notice of revocation of acceptance, which was effective following the inspection on November 13, 1984.

The trial court's findings of fact will not be set aside on appeal unless clearly erroneous, with due regard given to the trial court's opportunity to judge the credibility of witnesses. Rule 52(a), N.D.R.Civ.P. A finding of fact is clearly erroneous when the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been made. *KBM, Inc. v. MacKichan*, 438 N.W.2d 181 (N.D.1989). Simply because we may have viewed the evidence differently than did the trial court if we had been the initial trier of fact does not entitle us to reverse the lower court. *KBM, Inc. v. MacKichan, supra.*

 Cudworth particularly disputes the trial court's finding that Hart Honey revoked its acceptance in a timely manner. Section 41–02–71(1)(b), N.D.C.C., provides that the buyer may revoke where he has accepted the goods without discovery of nonconformity but acceptance was induced by difficulty of discovery before acceptance

goods before they are accepted and revocation of acceptance. *Compare* Section 41–02–65, N.D. C.C. [U.C.C. § 2–602], *with* Section 41–02–71, N.D.C.C. [U.C.C. § 2–608].

or by the seller's assurances. Here, Hart Honey's acceptance was clearly induced by the difficulty in inspecting the equipment and by Cudworth's assurances that the equipment was of the same type and condition as the viewed supers.

Section 41–02–71(2), N.D.C.C., further requires that the buyer revoke his acceptance within a reasonable time after discovery of the nonconformity. The trial court found that Cudworth made no effort to aid Hart Honey in its attempts to identify the equipment it had purchased. When Hart Honey's representatives finally had an opportunity to fully inspect the goods in November 1984 they contemporaneously expressed their refusal to take possession of the equipment and advised Cudworth that they wanted their money back. Although Cudworth relies upon the fact that Hart Honey's attorney sent a formal letter of revocation some time later, the trial court found that Hart Honey had notified Cudworth of its revocation of acceptance in November 1984 and that such notice was timely. There is testimony in the record to support that finding.

Many of the factual findings in this case are disputed, and there was much conflicting evidence. Upon review of the entire record, however, we are not left with a definite and firm conviction that a mistake has been made. Thus, we conclude that the challenged findings of fact are not clearly erroneous.

Cudworth asserts that Hart Honey was not entitled to revoke its acceptance and cancel the contract because it has not returned everything of value it has received. Specifically, Cudworth argues that Hart Honey was not entitled to cancel because it did not pay Cudworth the $21,000 it received for its share of the honey produced under the sharecrop agreement.

In *Erling v. Homera, Inc., supra,* we stated that Section 41–02–71, N.D.C.C., is supplemented by the general provisions governing rescission, including Section 9–09–04(2), N.D.C.C., which requires the re-

scinding party to "restore to the other party everything of value which he has received from him under the contract." The $21,000 represents Hart Honey's share of honey produced under its separate sharecrop agreement with Bracken Honey. Cudworth was not a party to that separate agreement, and the $21,000 cannot be construed to be a thing of value received from Cudworth under the sales contract. See Section 9–09–04(2), N.D.C.C.

Although Cudworth would be entitled to recover the reasonable value of the use of the supers during Hart Honey's period of possession, there is no evidence to suggest that the $21,000 would equal the value of reasonable use. Hart Honey received the $21,000 pursuant to the sharecrop agreement, which required it to provide sites on the reservation and pay all service and management fees in addition to providing the supers. We also note that the trial court's findings suggest that it was unable to determine whether the supers purchased by Hart Honey were ever actually used to produce honey during the 1984 season. If they were not used, Hart Honey derived no value from its constructive "use" of the supers.[6]

We conclude that the trial court did not err in determining that Hart Honey validly revoked its acceptance of the equipment and that Cudworth was accordingly liable for return of the purchase price.

## III

Cudworth asserts that the trial court erred in allowing interest at the rate of eleven percent from the date of sale.

Cudworth correctly points out that prejudgment interest is to be calculated at the statutory rate of six percent prescribed in Section 47–14–05, N.D.C.C. See, e.g., *Bismarck Realty Co. v. Folden,* 354 N.W.2d 636 (N.D.1984). In this case, however, the trial court did not award prejudgment interest. Hart Honey was paying eleven percent interest on its BIA loan, proceeds of

6. We note that Hart Honey never had actual possession of the equipment purchased from Cudworth.

which were used to purchase the equipment. The eleven percent interest awarded to Hart Honey was an element of *compensatory* damages, specifically incidental damages pursuant to Section 41–02–94(1), N.D.C.C. [U.C.C. § 2–715].[7] The statutory prejudgment-interest limitation is not applicable, and the trial court did not err in awarding interest as an element of compensatory damages in excess of that rate. *St. Paul Structural Steel Co. v. ABI Contracting, Inc.,* 364 N.W.2d 83 (N.D.1985).

## IV

Roger Bracken contends that the trial court erred in denying his motion for attorney fees pursuant to Section 28–26–01, N.D.C.C., which allows an award of attorney fees where there was such a complete absence of actual facts or law that a reasonable person could not have thought that the court would render judgment in his favor.

An award of attorney fees under Section 28–26–01, N.D.C.C., lies within the sound discretion of the trial court, and its determination will not be reversed on appeal absent an abuse of that discretion. See, e.g., *Larson v. Baer,* 418 N.W.2d 282 (N.D. 1988); *Napoleon Livestock Auction, Inc. v. Rohrich,* 406 N.W.2d 346 (N.D.1987). Upon review of the record on appeal we conclude that the trial court did not abuse its discretion in denying the motion for attorney fees.

That part of the judgment which awards damages against Bracken Honey is reversed. The remainder of the judgment and the order denying Roger Bracken's motion for attorney fees are affirmed. The cause is remanded to the trial court for modification of the judgment in accordance with this opinion.

LEVINE, MESCHKE and GIERKE, JJ., and VERNON R. PEDERSON, Surrogate Justice, concur.

7. Cudworth does not challenge Hart Honey's right to collect interest as an element of inciden-

VERNON R. PEDERSON, Surrogate Justice, sitting in place of ERICKSTAD, C.J., disqualified.

tal damages under the statute. See *Hofmann v. Stoller,* 320 N.W.2d 786 (N.D.1982).