2001 ND 144

**Garth EGGL, Plaintiff, Appellee and Cross–Appellant,**

v.

**LETVIN EQUIPMENT COMPANY, Defendant, Appellant and Cross–Appellee.**

No. 20000318.

Supreme Court of North Dakota.

Aug. 29, 2001.

436

George M. Ackre, Ackre Law Firm, Cando, ND, for plaintiff, appellee, and cross-appellant. Appearance by Shawn D. Ackre.

David F. Senn, Senn Law Office, Dickinson, ND, for defendant, appellant, and cross-appellee.

MARING, Justice.

[¶ 1] Letvin Equipment Company ("Letvin") has appealed a judgment in favor of Garth Eggl in Eggl's suit for damages arising out of Eggl's purchase of a used tractor. Eggl cross-appealed. We affirm.

I

[¶ 2] In November 1996, Eggl purchased from Letvin a 1985 John Deere 4850 tractor for $47,500. Letvin represented the tractor was in good working condition, and warranted it for "100 hrs or June 1, 1997 whichever is 1st." A December 13, 1996, Letvin checklist indicated the tractor had 4046 hours on it. The tractor was delivered to Eggl, and he first used it in the spring of 1997. The tractor stalled in the field in the fall of 1997, and Eggl brought it to Devils Lake Equipment Company for repair. An October 7, 1997, Devils Lake Equipment Company invoice indicated the tractor had 4207 hours on it. Eggl next used the tractor in 1998. The tractor stalled again, and it was returned to Devils Lake Equipment Company for more extensive inspection and repair of the power shift transmission.

[¶ 3] Eggl sued Letvin for breach of express and implied warranties, fraud, misrepresentation, and deceit, seeking damages of at least $16,000. After a trial on May 24, 2000, the trial court made the following findings of fact:

10. Upon inspection in 1998 by Devils Lake Equipment Company it was found that the wrong sized o-rings were placed in the tractor prior to plaintiff's acquisition of the tractor. The defective o-rings caused undue wear and tear on the hydraulic system rendering the tractor to not be fit for the purpose for which it was purchased.

11. That as a result of the above-mentioned problems, the tractor was not reasonably fit for purpose for which it was purchased and was not of merchantable quality at the time of the sale, being not fit for use as a tractor for farming purposes, and accordingly in a state of breach of the implied warranties of merchantability and fitness for purpose of use intended.

The trial court issued the following conclusions of law:

5.

The fact that it took a portion of two farming seasons to establish by Plaintiff that the tractor was not reasonably fit for the purpose intended as outlined in § 51–07–01[sic] of the North Dakota Century Code under these circumstances would be within a reasonable time limit for discovery.

6.

That the o-rings as referred to above were defective and were the primary cause of the tractor's failure. It makes no difference whether o-rings were de-

fective because of replacement by Letvin Equipment or because of the original installation by a manufacturer.

### 7.

That case law has established that a buyer subject to the circumstances occurring herein is not limited to a remedy of [rescission] but instead may seek recovery of damages resulting from that defect ... That the court finds the Defendant is not responsible for damages with regard to the first instance of repair in 1997 but ... finds that the Defendant is responsible for the second and successful attempt to repair said tractor in 1998. Said damages being established in the total of $11,925.78.

[¶4] Judgment was entered for Eggl against Letvin for $11,925.78 and costs of $2,044.92 on September 14, 2000. Letvin appealed, and Eggl cross-appealed.

### II

[¶5] Letvin contends (1) the finding it breached an implied warranty of merchantability is clearly erroneous; (2) the findings the wrong sized o-rings were placed in the tractor and caused Eggl's problems are clearly erroneous; (3) using the tractor for more than 160 hours and six months was not a reasonable time within which to detect any defects existing at the time of sale; and (4) the court erred in concluding the o-rings caused the tractor's failure and it makes no difference whether they were installed by Letvin or the manufacturer. In his cross-appeal, Eggl contends the trial court erred in failing to award damages for the first repair attempt.

[¶6] Findings of fact are subject to a clearly erroneous standard of review under N.D.R.Civ.P. 52(a). *Schroeder v. Buchholz*, 2001 ND 36, ¶7, 622 N.W.2d 202. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to suppo ; it, or if, although there is some eviden e to support it, on the entire evidence we are left with a definite and firm conviction a mistake has been made." *Schmitz v. Schmitz*, 2001 ND 19, ¶7, 622 N.W.2d 176. Conclusions of law are fully reviewable. *Pfeifle v. Tanabe*, 2000 ND 219, ¶7, 620 N.W.2d 167.

### III

[¶7] Letvin contends the finding it breached an implied warranty of merchantability is clearly erroneous.

[¶8] Section 41–02–31, N.D.C.C. (U.C.C. § 2–314) provides, in part:

1. Unless excluded or modified (section 41–02–33), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

. . .

2. Goods to be merchantable must be at least such as:

. . . .

c. Are fit for the ordinary purposes for which such goods are used. . . .

A trial court's determinations on questions of breach of warranty are treated as findings of fact subject to the clearly erroneous standard of N.D.R.Civ.P. 52(a). *Korol v. Aronson*, 360 N.W.2d 684, 685 (N.D. 1985). Whether a product's non-conformity substantially impairs its value to the buyer is a question of fact. *Erling v. Homera, Inc.*, 298 N.W.2d 478, 481 (N.D. 1980). "A party alleging a breach of warranty has the burden of establishing the existence of a warranty, a breach of warranty, and that the breach of warranty proximately caused the damages alleged."

Hagert v. Hatton Commodities, Inc., *384 N.W.2d 654, 657 (N.D.1986).* It has been held a new car's "inoperability establishe[s] its failure to conform to the contract of sale," and the overheating of an engine "is of such significance as to constitute a nonconformity without evidence as to the specific technical cause thereof." Capitol Dodge Sales, Inc. v. Northern Concrete Pipe, Inc., *131 Mich.App. 149, 346 N.W.2d 535, 539 n. 11 (1983). A farm tractor which cannot be used to pull an implement because the tractor's transmission is inoperable is not fit for the ordinary purposes for which such goods are used.*[1] See Gimbel v. Kuntz, *286 N.W.2d 501 (N.D.1979);* Hoffman Motors, Inc. v. Enockson, *240 N.W.2d 353 (N.D.1976);* Bratberg v. Advance–Rumely Thresher Co., *61 N.D. 452, 238 N.W. 552 (1931);* Dwinnell v. Boehmer, *60 N.D. 302, 234 N.W. 655 (1931).*

■ [¶ 9] Eggl testified he has two tractors; before this tractor needed repair, he used it only for pulling a 26½ foot cultivator with 7–inch sweeps, which is the same cultivator he pulled with his other tractor, which is ten years older, and has 50 fewer horsepower; the tractor "just kept quitting in the field"; after the tractor was repaired he bought and has been using a 32 foot cultivator on the tractor; in his opinion, the tractor could not do the work it was designed for when he bought it, was not fit for the purpose for which he purchased it, and was defective when he purchased it; and since being repaired, "the tractor now is being used for the type of work it was designed for." Kelly Follman, a mechanic, testified the tractor should "actually play with" a 26 ½ foot cultivator, which it should pull "real easy," and the "tractor is designed to do that type of work and much more." Other

evidence that the tractor was not merchantable when Eggl purchased it is hereinafter set forth in ¶¶ 11 and 12. We conclude the trial court's finding the tractor breached the implied warrant of merchantability is not clearly erroneous.

## IV

■ [¶ 10] Letvin contends the trial court's findings the wrong sized o-rings were placed in the tractor and they caused Eggl's problems are clearly erroneous. The trial court found the wrong sized o-rings were installed in the tractor before Eggl acquired it and the defective o-rings caused the tractor to be unfit for the purpose for which it was purchased. There was evidence the o-rings, regardless of their size, were cut and the defective o-rings caused the tractor to fail.

[¶ 11] Kelly Follman, a mechanic with Devils Lake Equipment Company, testified he has worked on the hydraulic and transmission systems of many John Deere 4850 tractors; if the hydraulic system is "malfunctioning the tractor doesn't function"; he worked on the tractor in the summer of 1998; "two packings [o-rings] that go between the clutch housing and transmission" were cut, which "[a]fter a period of time" would cause the tractor to "stop or stall"; "[t]he transmission was shot, period"; and, because of the condition of the o-rings, "it was losing lube pressure ... and it wasn't engaging the [clutch] packs ... so something had to slip someplace ... it got warm and started taking some of the facings off because it wasn't engaged all the way." Follman further testified:

Q Would the o-rings naturally wear out that way, in your opinion?

---

1. As the trial court observed at trial: "I mean, within a couple hundred hours it stopped in the middle of the field. That's not what a tractor is supposed to do."

A No, that's clean cut, it's sliced. I don't think so.

Q Do you have an opinion how the o-rings would have gotten that way?

A Oh, I don't know. They could've been put in wrong. It could be old ones. It could be someone sliced them or they weren't all the way lined up in the hole when they put the transmission case back on and sliced it and they pushed them out. It could be just about anything.

. . .

He only had the tractor a little bit over 200 hours and I think the problem existed well before that.

. . . the reason it wouldn't work is because among other things there were defective o-rings . . . That caused the problem . . . That had occurred prior to Garth Eggl acquiring or purchasing the tractor.

[¶ 12] David Hoesel, Letvin's service manager, testified the split o-rings and a new one are "basically the same size"; the o-rings were not "installed in the passage like it should be" during assembly of the transmission at the factory; Devils Lake Equipment Company "overlooked the problem" the first time; the o-rings "even if they are damaged, did not cause the problem"; and the problem was caused by "failure of the transmission pump."

[¶ 13] "A choice between two permissible views of the evidence is not clearly erroneous." *Hurt v. Hurt*, 2001 ND 13, ¶ 16, 621 N.W.2d 326. There is evidence supporting the finding defective o-rings rendered the tractor unfit for the purpose for which it was purchased and the finding is not clearly erroneous.

### V

[¶ 14] Letvin contends using the tractor for more than 160 hours and six months was not a reasonable time within which to detect any defects existing at the time of the sale of the tractor to Eggl.

[¶ 15] Section 51-07-07, N.D.C.C., provides:

Any person purchasing any gas or oil burning tractor, gas or steam engine, or harvesting or threshing machinery for that person's own use has a reasonable time after delivery for the inspection and testing of the same, and if it does not prove to be reasonably fit for the purpose for which it was purchased, the purchaser may rescind the sale by giving notice, within a reasonable time after delivery, to the parties from whom any such machinery was purchased, or the agent who negotiated the sale or made delivery of such personal property, or the agent's successor, and by placing the same at the disposal of the seller. Any provision in any written order or contract of sale, or other contract, which is contrary to any of the provisions of this section, hereby is declared to be against public policy and void.

The statute provides a purchaser of a tractor a reasonable time to ascertain its fitness for the purpose for which it was purchased and to rescind the sale if it is unfit. *Uhrig v. J.I. Case Threshing Machine Co.*, 64 N.D. 189, 197, 250 N.W. 922, 925 (1933). "Whether the right to rescind is exercised within a reasonable time is to be determined from all the circumstances." *Dwinnell v. Boehmer*, 60 N.D. 302, 234 N.W. 655 Syllabus ¶ 4 (1931). "Whether machinery is reasonably fit for the purpose for which it was purchased, and whether a contract of purchase has been rescinded within a reasonable time or not, are questions of fact for the jury." *Bratberg v. Advance–Rumely Thresher Co.*, 61 N.D. 452, 454, 238 N.W. 552, 554, Syllabus ¶ 10 (1931). Thus, under N.D.C.C. § 51–07–07,

a product's fitness and a reasonable time to rescind are fact questions.

[¶ 16] "Section 51–07–07, NDCC, does not provide for any remedy other than rescission." *Hoffman Motors, Inc. v. Enockson*, 240 N.W.2d 353, 355 (N.D.1976). Although Eggl seeks damages, rather than rescission, N.D.C.C. § 51–07–07, does play a part:

> We conclude that the provision in § 51–07–07 relating to voiding a disclaimer of warranty can be relied upon by one who does not demand rescission.
>
> Once the disclaimer provision is voided, Section 41–02–31, NDCC (2–314, UCC), injects an implied warranty of merchantability into the contract for the sale of the tractor.

*Enockson*, 240 N.W.2d at 355.

[¶ 17] Under N.D.C.C. § 41–02–31 (U.C.C. § 2–314), to be merchantable, goods must be at least "fit for the ordinary purposes for which such goods are used." Section 41–02–70(3)(a), N.D.C.C. (U.C.C. § 2–607), provides: "If a tender has been accepted: a. The buyer must within a reasonable time after the buyer discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Section 41–02–71(2), N.D.C.C. (U.C.C. § 2–608), provides a buyer's revocation of acceptance of goods "must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects" and the revocation "is not effective until the buyer notifies the seller of it." "What is a reasonable time for taking any action depends on the nature, purpose, and circumstances of such action." N.D.C.C. § 41–01–14(2) (U.C.C. § 1–204).

[¶ 18] A breach of a warranty may be a nonconformity triggering a buyer's right to revoke acceptance of goods. *Campbell Farms v. Wald*, 1998 ND 85, ¶ 14, 578 N.W.2d 96; *Hart Honey Co. v. Cudworth*, 446 N.W.2d 742, 745 (N.D. 1989). "A 'reasonable time to inspect' under the UCC [§ 2–606] must allow an opportunity to put the product to its intended use, or for testing to verify its capability to perform as intended." *Capitol Dodge Sales, Inc. v. Northern Concrete Pipe, Inc.*, 131 Mich.App. 149, 346 N.W.2d 535, 539 (1983). Questions of nonconformity with a contract, substantial impairment of value, and timely notice of revocation are questions of fact. *Campbell Farms*, at ¶ 14; *Cudworth*, at 745. "The sufficiency of notice and what constitutes a reasonable time within which to give notice of breach are questions of fact." *Stamper Black Hills Gold Jewelry, Inc. v. Souther*, 414 N.W.2d 601, 605 (N.D.1987).

One commentator has written that "[i]f any pattern is emerging it is that the more severe the defect, the greater the time within which the buyer has the right to invoke the remedy...." Duesenberg, General Provisions, Sales, Bulk Transfers and Documents of Title, 28 Bus.Law. 805, 827 (1973).

James J. White & Robert S. Summers, *Uniform Commercial Code* § 8–3, p. 448 n. 22 (4th ed.1995). While there are situations in which a buyer has delayed so excessively that his actions are untimely as a matter of law, generally the question of whether a notification of revocation of acceptance was given within a reasonable time is a fact question. *Mercedes–Benz of North America, Inc. v. Norman Gershman's Things To Wear, Inc.*, 596 A.2d 1358, 1363 (Del.Sup.1991) (upholding jury finding revocation of acceptance of a new car after 22 months and 22,000 miles was reasonable). "Whether a party's revocation of acceptance is effective in any given case is dependent upon the facts and circumstances surrounding the revocation,

and is normally a question for the trier of fact." *Triad Systems Corp. v. Alsip,* 880 F.2d 247, 249 (10th Cir.1989). Thus, under N.D.C.C. § 41–02–31 (U.C.C. § 2–314), as under N.D.C.C. § 51–07–07, the time for discovering a breach of warranty and what is a reasonable time for revocation of acceptance are fact questions.

[¶ 19] In *Gimbel v. Kuntz,* 286 N.W.2d 501, 507 (N.D.1979), this Court addressed what is a reasonable time within which to discover defects in a tractor:

> The purchaser of a tractor designated in Section 51–07–07, N.D.C.C., has a reasonable time after delivery to inspect and test the tractor to determine if it is reasonably fit for the purpose for which it was purchased. We believe that the term "reasonably fit for the purpose for which it was purchased" has to mean that the tractor is free of serious defects which would render it inoperable, and that, under ordinary and reasonable operating conditions, the tractor will perform as intended and expected.
>
> Certainly, every mechanical failure in a new and complex machine does not render the machine unreasonably fit for the purpose for which it was purchased.... So at the outset, it may be necessary to distinguish between defects which merely require minor repair to correct, and significant defects which render the machine inoperable, and remain after the seller has been afforded a reasonable opportunity to correct.

In *J.I. Case Credit Corp. v. Stark,* 64 Wash.2d 470, 392 P.2d 215, 221 (1964), the court said a purchaser's use of a combine "for the harvest season of 1959, and part of 1960, consisting of about 2 months or less of total operation ... did not constitute more than a reasonable time to ascertain if the machine could be made to function properly." In *Triad Systems Corp.,* 880 F.2d at 249, the court said, "Mr. Alsip's use of the Triad [computer] system for more than two years after it was first delivered was not unreasonable." In *Dwinnell v. Boehmer,* 60 N.D. 302, 234 N.W. 655 (1931), the seller delivered a tractor on September 18 or 19, 1928. The buyer had problems with it and did not make the first payment. On February 14, 1929, the buyer complained of defects in the tractor. On May 14, 1929, the seller sued for the purchase price. The defendant answered, giving notice of rescission. The court held the notice of rescission on May 14, 1929, was not too late. *Id.* at 309, 234 N.W. at 658.

[¶ 20] In light of the circumstances and the cited decisions on determining a reasonable time, we conclude the trial court's finding that the time involved here, during which relatively few hours were placed on the tractor, was "within a reasonable time limit for discovery" is not clearly erroneous.

## VI

[¶ 21] Letvin contends the trial court erred in concluding it makes no difference whether the o-rings were installed by Letvin or the manufacturer. This Court has addressed such an issue:

> The buyer's right of revocation is not conditioned upon whether it is the seller or the manufacturer that is responsible for the nonconformity. Under § 41–02–71 (2–608), N.D.C.C., a buyer is entitled to revoke his acceptance of a unit if a "nonconformity substantially impairs its value to him," regardless of whether it is the seller or the manufacturer that is responsible for the nonconformity.

*Troutman v. Pierce, Inc.,* 402 N.W.2d 920, 922–23 (N.D.1987). *See also Gimbel v. Kuntz,* 286 N.W.2d 501, 508 (N.D.1979) ("The Uniform Commercial Code provides for recovery in warranty for all types of loss resulting from un-merchantable prod-

ucts, without regard to fault."). Whether it was Letvin or the tractor's manufacturer who was responsible for the defect giving rise to Eggl's right to recover damages, the tractor involved here was not reasonably fit for the purpose for which it was purchased, and thereby in breach of the implied warranty of merchantability. We conclude the trial court did not err in concluding "[i]t makes no difference whether o-rings were defective because of replacement by Letvin Equipment or because of the original installation by a manufacturer."

### VII

[¶ 22] Eggl has cross-appealed, contending the trial court erred in failing to award damages for the first attempt to repair the tractor. In a letter to the parties' attorneys, the court explained "it is my opinion that Letvin cannot be held responsible for the failure of the repairman chosen by Eggl to identify and remedy the defect at the initial repair attempt."

[¶ 23] Eggl argues:

We believe and submit that the Court did error [sic] in failing to award the Appellee/Cross Appellant damages for the first instance when the tractor stalled in the amount of $1,941.51. In that the tractor undoubtedly stalled for the same reason as is shown by testimony. It took a substantial period of time to discover the reason and until the reason was discovered an appropriate solution to the problem could not be accomplished. This all would fall under appropriate damages that should have been awarded to Mr. Eggl. Certainly the burden of costs should not rest on the Appellee/Cross–Appellant in this matter especially since the Court did award damages for the ultimate repair.

Without supportive reasoning or citations to relevant authorities, Eggl's argument is without merit. *E.g., In re J.A.G.,* 552 N.W.2d 317, 324 (N.D.1996); *Hodek v. Greater Nelson County Consortium,* 520 N.W.2d 825, 829 (N.D.1994); *Friedt v. Moseanko,* 484 N.W.2d 861, 863 (N.D.1992); *Lang v. State,* 2001 ND App 2, ¶ 8, 622 N.W.2d 238. We conclude the trial court did not err in failing to award damages to Eggl for the initial ineffective attempt to identify and remedy the defect in the tractor.

### VIII

[¶ 24] The judgment is affirmed.

[¶ 25] GERALD W. VANDE WALLE, C.J., and WILLIAM A. NEUMANN, DALE V. SANDSTROM and CAROL RONNING KAPSNER, JJ., concur.